GRIEVANCE COMMITTEE OF THE BAR OF HARTFORD
COUNTY *v.* JOHN ROTTNER

GRIEVANCE COMMITTEE OF THE BAR OF HARTFORD
COUNTY *v.* GEORGE LESSNER

KING, C. J., MURPHY, ALCORN, COMLEY and DEVLIN, Js.

Argued June 5—decided July 20, 1964

*Joseph W. Bishop, Jr.,* with whom, on the brief, were *Anson T. McCook* and *Herbert A. Lane,* for the appellants (defendants).

*John D. LaBelle,* state's attorney, with whom, on the brief, were *George D. Stoughton* and *Harry W. Hultgren, Jr.,* assistant state's attorneys, for the appellee (plaintiff in each case).

COMLEY, J. The defendants are the two senior members of the firm of Lessner, Rottner, Karp and Jacobs of Manchester, and both have been members of the bar for over thirty years. On presentment to the Superior Court by the grievance committee of the Hartford County bar, the defendants were found guilty of violations of the preamble to the canons of professional ethics and also of Nos. 6, 15, 29 and 37 of the canons.

The charges against the defendants arose out of the relationship of the firm with one of its clients, Stewart J. Twible, Jr. On March 17, 1959, Twible consulted the defendant George Lessner concerning the possibility of bringing suit against a physician and two state policemen who had been responsible for his temporary commitment to a mental hospital as a result of a fight between him and his son in which it was claimed that he had assaulted the latter. In talking to Lessner about the incident, Twible disclosed no medical information concerning himself, but Lessner observed that he appeared to be mentally ill. By letter dated April 10, 1959, Lessner informed Twible that he did not wish to represent him in the matter. No fee was charged, and Lessner did not discuss the matter with any of his partners or associates. Lessner's written notes made at this conference were placed in the dead files of the firm.

Among the junior members of the defendants' firm are Ronald Jacobs, a member of the bar for approximately ten years, and L. Paul Sullivan, a member of the bar for two years. Between April 5, 1960, and April 5, 1962, Jacobs and another junior member of the firm represented Twible in two minor collection matters arising out of his operation of a service station. Jacobs was also consulted in connection with the killing of Twible's dog by an automobile. All of these matters had been settled or otherwise closed by April 5, 1962, and the only charge made by the firm was a fee of $25 for services in one of the collection matters.

On June 4, 1962, Jacobs was retained by Twible in another collection matter, involving approximately $200, against Douglas Houghton, who was nineteen years of age and had no visible assets. Hough-

ton never entered an appearance in the action brought by Jacobs to collect this debt. On Jacobs' instructions, given on July 25, 1962, Sullivan prepared the papers needed to obtain a default judgment against Houghton. On July 30, 1962, Twible was requested by letter to come into the firm's office to sign the papers, but he did not do so. The law firm was not paid any retainer by Twible in the Houghton case.

On July 31, 1962, Sullivan was consulted by Thomas O'Brien, who wanted to bring suit against Twible for assault and battery. Sullivan fully disclosed to O'Brien that the firm had represented Twible in the other matters mentioned above, and, before undertaking to represent O'Brien, Sullivan consulted Jacobs and ascertained that Twible was not on a retainer basis and that he had not consulted Jacobs about the O'Brien case.

On August 1, 1962, Sullivan, with Jacobs' approval, instituted suit on O'Brien's behalf against Twible, while the Houghton matter was still pending. The first count charged Twible with assault and battery, and the second count sought punitive and exemplary damages, charging that the assault and battery by Twible was wilful, wanton, malicious, premeditated and vindictive. The firm entered its appearance for O'Brien. The complaint sought damages of $20,000 from Twible, and his home was attached.

Neither Sullivan nor Jacobs discussed O'Brien's case with Twible, and no consent was secured from him before the O'Brien suit was commenced. After the O'Brien writ was served on Twible, Mrs. Twible called Sullivan and asked why the firm took the O'Brien case. Sullivan told her that it was a just and valid claim, and the firm had decided

to take it. Even though there were protestations by the Twibles concerning the matter and the attachment of their home, neither Jacobs nor Sullivan offered to withdraw the firm's appearance in the O'Brien matter. On October 2, 1962, the defendant John Rottner first learned that the firm had appeared in both cases.

On October 6, 1962, Twible complained to the Hartford County grievance committee that the firm of Lessner, Rottner, Karp and Jacobs, while representing him in the Houghton collection case, had undertaken to represent O'Brien against him. On October 12, 1962, the committee, in a letter addressed to the firm, attention of Jacobs, advised that Twible had complained that the firm, while representing him in one case, represented another client in a case against Twible, and the committee requested the firm to furnish an explanation. The committee requested Jacobs and Sullivan to be present at a hearing to be held on October 29, 1962, but did not request the attendance of Lessner or Rottner. Lessner first learned about the appearance of the firm in both cases when Jacobs, on October 13, 1962, showed him the letter from the grievance committee.

Rottner did not learn of Lessner's 1959 conversation with Twible concerning his temporary commitment to a mental hospital because of the assault on his son until the grievance committee hearing was held. Both Lessner and Rottner attended the grievance committee hearing as senior members of the firm in a matter involving the firm's professional conduct and for the purpose of acting as counsel for Jacobs and Sullivan.

At the hearing, all members of the firm who were present, including Lessner and Rottner, were sworn

as witnesses. Both Lessner and Rottner stated emphatically and without qualification that they did not believe that any rule of ethics was violated by the firm's acceptance of the O'Brien case, because it had nothing in common with the Houghton matter.

After the hearing, Lessner and Rottner permitted the firm's appearance in both the Houghton and O'Brien matters to continue. On February 2, 1963, Lessner, Rottner, Jacobs and Sullivan were informed by the grievance committee that they would be presented to the Superior Court for disciplinary action. The defendants were charged with violation of the preamble to, and of Nos. 6, 15, 29 and 37 of, the canons of professional ethics.

The defendants, together with Jacobs and Sullivan, consulted an attorney who had no connection with the firm. That attorney advised them not to withdraw from either the O'Brien or the Houghton matter because withdrawal would constitute an admission of impropriety. On the advice of counsel, the defendants continued to maintain the O'Brien and Houghton matters in their present status.

The court found the defendants guilty of the violations charged, and it rendered judgment reprimanding them and ordering their withdrawal from the Houghton and O'Brien matters with the repayment of all retainers and without liability on the part of the clients for any services rendered by the firm. From that judgment, the defendants have appealed to this court.

We can properly turn to the memorandum of decision to ascertain the grounds upon which the court acted. *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 230, 140 A.2d 863; *Rogers*

v. *Kinnie*, 134 Conn. 58, 61, 54 A.2d 487. The court concluded that the defendants violated the preamble to the canons of professional ethics, in that the firm accepted O'Brien's action against Twible while the firm was representing Twible in the Houghton collection matter. The court found such violations to exist even apart from any consideration of the existence of a conflict of interest. In other words, the court concluded that a firm may not accept any action against a person whom they are presently representing even though there is no relationship between the two cases. In arriving at this conclusion, the court cited an opinion of the committee on professional ethics of the New York County Lawyers' Association which stated in part: "While under the circumstances . . . there may be no actual conflict of interest . . . 'maintenance of public confidence in the Bar requires an attorney who has accepted representation of a client to decline, while representing such client, any employment from an adverse party in any matter even though wholly unrelated to the original retainer.' See Question and Answer No. 350." N.Y. County L. Assn., Question and Answer No. 450 (June 21, 1956).

We feel that this rule should be rigidly followed by the legal profession. When a client engages the services of a lawyer in a given piece of business he is entitled to feel that, until that business is finally disposed of in some manner, he has the undivided loyalty of the one upon whom he looks as his advocate and his champion. If, as in this case, he is sued and his home attached by his own attorney, who is representing him in another matter, all feeling of loyalty is necessarily destroyed, and the profession is exposed to the charge that it is interested only in money.

The almost complete absence of authority governing the situation where, as in the present case, the lawyer is still representing the client whom he sues clearly indicates to us that the common understanding and the common conscience of the bar is in accord with our holding that such a suit constitutes a reprehensible breach of loyalty and a violation of the preamble to the Canons of Professional Ethics. This determination is sufficient to support the judgment and to render unnecessary a discussion of the specific canons which the court found were violated by the defendants.

There is no error.

In this opinion KING, C. J., MURPHY and DEVLIN, Js., concurred; ALCORN, J., concurred in the result.