STATE OF CONNECTICUT *v.* REGINALD JONES

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued December 5, 1979—decision released May 6, 1980

*John R. Williams,* for the appellant (defendant).

*Linda K. Lager,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

LOISELLE, J.   The defendant appeals from the denial of his motion to disqualify every prosecutor affiliated with the office of the state's attorney for the judicial district of New Haven on grounds of failure to preserve the confidences and secrets of a

former client and conflict of interest. The motion was granted in part by the Superior Court, *Kinney, J.,* and from that decision the defendant appeals.

The court's finding sets forth the following facts. The defendant Reginald Jones, a minor at seventeen years of age, is charged with the offense of murder. His father Sammie L. Jones, hereinafter referred to as Mr. Jones, has been appointed guardian ad litem in this prosecution. The defendant has filed notice that he may rely upon a defense of mental disease or defect in this case. Richard P. Sperandeo is the chief assistant state's attorney for the judicial district of New Haven. His responsibilities include the prosecution of crime and representation of the interests of the state. Sperandeo's responsibilities are, on occasion, supervisory when he assigns cases to other attorneys in the office and consults with those attorneys, but he is not so involved in all cases. Sperandeo is also a partner in the law firm of Sperandeo, Weinstein and Donegan, whose two other partners are Josef A. Weinstein and Harold C. Donegan. Sperandeo shares equally with his two partners the responsibilities of his law firm and the representation of all the firm's clients.

The law firm of Sperandeo, Weinstein and Donegan represented the defendant Reginald Jones in a civil action which arose out of an automobile accident in September, 1966, when the defendant was five years old. Reginald Jones suffered facial injuries and a possible concussion in that accident. Sperandeo and Donegan worked on the case and helped reach a settlement in 1970. Although the law firm maintained a file containing medical reports and other material on its representation of Reginald Jones in this action, Sperandeo has not represented

the defendant in any capacity nor has he looked at the file since the case was settled in 1970. Upon the request of the defendant's present attorney and with the authorization of Mr. Jones, Donegan provided the defendant's attorney with all the medical reports concerning the 1966 automobile accident. The defendant's attorney had requested the entire file, but Donegan refused to give it to him because he did not think the defendant's attorney was entitled to it.

In December, 1978, Mr. Jones consulted Donegan about a claim for property damage to his automobile. Donegan talked with Mr. Jones in his office and took information from him, but did nothing more than that. All that Donegan has in his office file regarding this matter is two sheets of paper, one containing notes from his conversation with Mr. Jones, the other indicating the name of the insurance adjuster handling the claim. The property damage claim did not involve the defendant Reginald Jones in any way. Nevertheless, upon the filing of the defendant's motion to disqualify the prosecutors, Donegan terminated his representation of Mr. Jones.

The information charging the defendant with murder was filed on December 15, 1978. The defendant's motion to disqualify prosecutors was filed on December 26, 1978. As of January 4, 1979, the law firm of Sperandeo, Weinstein and Donegan has not represented the defendant or his father in any pending business. Although Sperandeo has access to the defendant's criminal file in the state's attorney's office, he has not looked at this file nor has he had anything to do with the prosecution of the defend-

ant. He has not discussed the case with any of the state's attorneys. Sperandeo is not prosecuting Reginald Jones.

The court concluded that the defendant failed to establish any substantial relationship between the injuries sustained by him in 1966 and possible defenses to this prosecution. The court concluded that the defendant failed to establish that Sperandeo had acquired confidential information from him as a result of his prior representation, or information which if disclosed would prejudice the defendant in the criminal prosecution. The court also concluded that legal disqualification of Sperandeo was not required, but ordered him not to participate in any way, directly or indirectly, in the prosecution of the case and not to discuss the case with any personnel of the state's attorney's office or other law enforcement authorities. With regard to participation in the case by other prosecutors affiliated with the office of the New Haven state's attorney, the court concluded that there was no actual conflict of interest, nor the appearance thereof, nor any impropriety which would preclude prosecution of the defendant by the remaining prosecutors at that office. The defendant's motion to disqualify them was denied.

The defendant assigns error to each of these conclusions, except to the extent that they forbid Sperandeo's participation in the case. The defendant continues to seek legal disqualification of Sperandeo, as well as every other prosecutor affiliated with the New Haven state's attorney's office. The defendant also assigns error to that portion of the finding which overrules his claims of law. These claims of law along with the briefs of the parties

argue the standards of professional conduct articulated by other jurisdictions because the issues presented have not been addressed by this court.

The Superior Court has inherent and statutory authority to regulate the conduct of attorneys who are officers of the court. *Heiberger* v. *Clark,* 148 Conn. 177, 169 A.2d 652 (1961); *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 140 A.2d 863 (1958); General Statutes §§ 51-80, 51-84 and 51-90. The conduct of attorneys is also regulated by the Code of Professional Responsibility; Practice Book, 1978, pp. 1-52; which has been approved by the judges of the Superior Court. It is the duty of the Superior Court to enforce the canons of ethics. *State* v. *Jackson,* 162 Conn. 440, 449, 294 A.2d 517 (1972). In its execution of this duty, the Superior Court has broad discretionary power to determine whether an attorney should be disqualified for an alleged breach of confidentiality or conflict of interest. See *Schloetter* v. *Railoc of Indiana, Inc.,* 546 F.2d 706, 710 (7th Cir. 1976); *Hull* v. *Celanese Corporation,* 513 F.2d 568, 571 (2d Cir. 1975); *Waters* v. *Western Company of North America,* 436 F. 2d 1072, 1073 (10th Cir. 1971); *Richardson* v. *Hamilton International Corporation,* 469 F.2d 1382, 1385–86 (3d Cir. 1972), cert. denied, 411 U.S. 986, 93 S. Ct. 2271, 36 L. Ed. 2d 964 (1973). In determining whether the Superior Court has abused its discretion in denying a motion to disqualify, this court must accord every reasonable presumption in favor of its decision. Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. *State* v. *Brown,* 169 Conn. 692, 702, 364 A.2d 186 (1975).

Canon 4 of the Code of Professional Responsibility provides that "A Lawyer Should Preserve the Confidences and Secrets of a Client." Canon 9 provides that "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." Practice Book, 1978, pp. 23, 50.[1] An attorney should be disqualified pursuant to Canon 4 if he has accepted employment adverse to the interests of a former client on a matter substantially related to the prior litigation. *Allegaert* v. *Perot,* 565 F.2d 246, 250 (2d Cir. 1977); *Schloetter* v. *Railoc of Indiana, Inc.,* supra, 710; *American Can Co.* v. *Citrus Feed Co.,* 436 F.2d 1125, 1130 (5th Cir. 1971); *City of Cleveland* v. *Cleveland Electric Illuminating Co.,* 440 F. Sup. 193, 205 (N.D. Ohio 1977). The substantial relationship test has been honed in its practical application to grant disqualification only upon a showing that the relationship between the issues in the prior and present cases is "patently clear" or when the issues are "identical" or "essentially the same." *Government of India* v. *Cook Industries, Inc.,* 569 F.2d 737, 739–40 (2d Cir. 1978). Before the substantial relationship test is applied, however, the moving party must prove that he had in the past enjoyed an attorney-client relationship with the attorney sought to be disqualified in order to show

---

[1] The defendant assigns as error the trial court's failure to disqualify the prosecutors under Canon 5 which states that "A Lawyer Should Exercise Independent Judgment on Behalf of a Client" and under Disciplinary Rule 5-105. Practice Book, 1978, pp. 25, 32. The scope of Canon 5, its ethical considerations and disciplinary rules, is limited to conflicts of interest: conflicts between attorney and client and conflicts between two or more simultaneous clients. Canon 5 is inapplicable to this case. *State* v. *Chambers,* 86 N.M. 383, 524 P.2d 999 (1974), relied on by the defendant, is also inapplicable to this case, because there the prosecutor had previously represented the defendant in the same case. The defendant did not brief his assignment of error on Canon 5. It is therefore considered abandoned. *State* v. *Lockman,* 169 Conn. 116, 121, 362 A.2d 920 (1975).

that the attorney was in a position in which he could have received information which his prior client might reasonably have assumed would be withheld from his present client, in this instance the state. *Allegaert* v. *Perot,* supra; *American Can Co.* v. *Citrus Feed Co.,* supra, 1129; *Cord* v. *Smith,* 338 F.2d 516, 523 (9th Cir. 1964). Once the existence of a prior attorney-client relationship is established and a substantial relationship between the matters in issue is found, the court need not inquire whether the attorney in fact received confidential information, because the receipt of such information is presumed. *Government of India* v. *Cook Industries, Inc.,* supra, 740; *Allegaert* v. *Perot,* supra, 250; *Emle Industries, Inc.* v. *Patentex, Inc.,* 478 F.2d 562, 571 (2d Cir. 1973); *Canadian Gulf Lines, Inc.* v. *Triton International Carriers, Ltd.,* 434 F. Sup. 691, 693 (D. Conn. 1976); *T. C. Theatre Corporation* v. *Warner Bros. Pictures, Inc.,* 113 F. Sup. 265, 269 (S.D. N.Y. 1953). The court cannot inquire into whether the lawyer did *in fact* receive confidential information during his previous employment which might be used to his former client's disadvantage, because a rule requiring the moving party to prove actual disclosures would destroy the very same confidences which Canon 4 protects.

The defendant alleges two violations of Canons 4 and 9 which involve Sperandeo. The first is Sperandeo's prior representation of the defendant in a civil action which was settled approximately nine years before the prosecution of this case had begun. In that case, Sperandeo represented the defendant both as an individual attorney and as a member of the firm Sperandeo, Weinstein and Donegan. The second alleged violation is the former representation of the defendant's father, Mr. Jones,

in a potential civil action by Sperandeo's partner Donegan and the law firm of Sperandeo, Weinstein and Donegan. Donegan and the law firm have voluntarily terminated their representation of Mr. Jones.

Donegan's former representation of Mr. Jones in December, 1978, establishes the existence of a prior professional relationship between Mr. Jones and Donegan, which extends to the law firm of Sperandeo, Weinstein and Donegan and to Sperandeo. *American Can Co.* v. *Citrus Feed Co.,* supra, 1129. The defendant, however, has failed to establish the second element of the disqualification test. The record does not show a substantial relationship between the criminal prosecution of Reginald Jones and the property damage claim contemplated by Mr. Jones. The court found that Mr. Jones' claim for property damage to his automobile did not involve Reginald Jones in any way. This finding is not attacked by the defendant. Donegan's prior representation of Mr. Jones does not require disqualification of Sperandeo.

Sperandeo's prior representation of the defendant in the civil action arising out of the automobile accident in 1966 establishes the existence of a prior attorney-client relationship, a relationship in which Sperandeo could have received medical information concerning the defendant which the defendant might reasonably assume would be withheld from the state in his criminal prosecution. In view of the notice given by the defendant that he may rely on a defense of mental disease or defect and the injuries to his head caused by the automobile accident, there is a substantial relationship between this criminal prosecution for murder and the prior civil litigation. Sperandeo's receipt of confidential information is

therefore presumed, and his employment as chief assistant state's attorney for the judicial district of New Haven requires his disqualification pursuant to Canon 4. To the extent that the trial court's order denied the defendant's request to disqualify Sperandeo, it is in error.

The defendant contends that disqualification of Sperandeo necessitates disqualification of every prosecutor affiliated with the office of the state's attorney for the judicial district of New Haven. This claim is based solely on Canon 9 because there is no evidence or even a claim that any other attorney in the state's attorney's office has had a prior professional relationship with Reginald Jones. The admonition of Canon 9 that a lawyer should avoid even the appearance of impropriety would not be, without more, enough to disqualify Sperandeo, let alone every prosecutor in the New Haven state's attorney's office. *International Electronics Corporation* v. *Flanzer,* 527 F.2d 1288, 1295 (2d Cir. 1975); *Society for Good Will to Retarded Children, Inc.* v. *Carey,* 466 F. Sup. 722, 724 (E.D. N.Y. 1979); *City of Cleveland* v. *Cleveland Electric Illuminating Co.,* supra, 205–206. The Connecticut Bar Association has cautioned against the promiscuous use of Canon 9 as a "convenient tool for disqualification when the facts simply do not fit within the rubric of other specific ethical and disciplinary rules." *International Electronics Corporation* v. *Flanzer,* supra, 1295. Although Canon 9 may be applied together with Canon 4 to disqualify counsel; *Schloetter* v. *Railoc of Indiana, Inc.,* supra, 709; *Canadian Gulf Lines, Inc.* v. *Triton International Carriers, Ltd.,* supra, 695; the appearance of impropriety alone is "simply too slender a reed on which to rest a dis-

qualification order except in the rarest of cases."
*Board of Education of the City of New York* v.
*Nyquist,* 590 F.2d 1241, 1247 (2d Cir. 1979).

The cases cited by the defendant in support of his
claim that the entire New Haven office must be dis-
qualified are distinguishable. In *Canadian Gulf
Lines, Inc.* v. *Triton International Carriers, Ltd.,*
supra, the third party garnishee's motion to dis-
qualify the law firm representing the plaintiff was
granted where one partner in the firm had incorpo-
rated the corporation in August, 1974, and the other
partner proceeded to garnish its assets, alleged to
be due and owing to the defendant, in September,
1975. The disqualification motions were based on
the theory that the law firm had obtained or could
have obtained confidential communications regard-
ing the debt owed the defendant by the garnishee
before deciding to represent the plaintiff. Id., 692.
In *Government of India* v. *Cook Industries, Inc.,*
supra, an associate who has been assigned to repre-
sent the defendant as a corporate client for three
years at one law firm left that firm to become associ-
ated with another firm where he was assigned within
the month to represent the plaintiff in a substanti-
ally related action against the defendant. Id., 738–
39. The court disqualified the associate and the
entire firm which had hired him from the case. Id.,
740. In *NCK Organization Ltd.* v. *Bregman,* 542
F.2d 128 (2d Cir. 1976), the plaintiff's motion to
disqualify the defendant's attorney and his law firm
was granted because the attorney was formerly
employed as house counsel for the plaintiff corpora-
tion and its wholly owned subsidiary and as vice-
president of the subsidiary. The Court of Appeals
upheld disqualification of the law firm because the
defendant's attorney, as counsel for the plaintiff,

had participated in drafting a contract for the corporation, but when his employment was terminated counseled both the defendant and the law firm in the litigation of the contract dispute against the corporation. Id., 131. In *Fund of Funds, Ltd.* v. *Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977), the defendant's law firm accepted a retainer from the plaintiff with knowledge that the defendant might be implicated in a securities action brought by the plaintiff. Despite its attempt to create a "Chinese wall" around the matter, the court found that the firm's attempt to segregate all material implicating the defendant and route it to outside counsel it had hired to represent the plaintiff required the firm to apply the knowledge it had gained through its confidential communications with the defendant. Id., 235–36. The court upheld the order granting the defendant's motion to disqualify outside counsel hired to represent the plaintiff. Id., 236. In each of these cases it appeared that the law firm had procured some advantage in the current litigation by virtue of its access to prior confidential communications between the lawyer and his former client in violation of Canon 4. This necessitated disqualification of the entire firm. *Canadian Gulf Lines, Inc.* v. *Triton International Carriers, Ltd.,* supra, 695; *NCK Organization Ltd.* v. *Bregman,* supra, 135. These cases[2] are distinguishable from the case at

[2] The remainder of the cases cited by the defendant in support of his assertion that every prosecutor in the New Haven office should be disqualified are inapplicable because their facts entail simultaneous representation of parties with conflicting interests in the same action; Opinion No. 26, Conn. State Bar Assn., Committee on Professional Ethics, 49 Conn. B.J., 469 (1975); simultaneous representation of parties with conflicting interests in different actions; *Cinema 5, Ltd.* v. *Cinerama, Inc.,* 528 F.2d 1384, 1386 (2d Cir. 1976); *Estep* v. *Johnson,* 383 F. Sup. 1323, 1324–25 (D. Conn. 1974); *Grievance Committee* v. *Rottner,* 152 Conn. 59, 65, 203 A.2d 82

bar because the court's finding in this case reveals no real or apparent advantage to the state's attorney's office by virtue of Sperandeo's prior confidential communications with the defendant. Sperandeo has had nothing to do with the prosecution of this case. He has not discussed the case with any of the assistant state's attorneys. He has not even looked at the defendant's criminal file. The defendant does not challenge these findings. Furthermore, it is unrealistic to assume that any prosecutor in the New Haven office has had or will have opportunity to read the private files of Sperandeo, Weinstein and Donegan on the 1966 civil action involving Reginald Jones. All the medical reports concerning Reginald Jones which were gathered by the firm have already been given to the defendant's attorney.

"[E]thical problems cannot be resolved in a vacuum." *Emle Industries, Inc.* v. *Patentex, Inc.,* supra, 565. A careful consideration of the facts as set out in the finding is required. These facts are not attacked. "Nor can judges exclude from their minds realities of which fair decisions would call for judicial notice." *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motor Corporation,* 518 F.2d 751, 753 (2d Cir. 1975). This court will not presume unethical conduct by Sperandeo or by the assistant state's attorneys affiliated with the New Haven office where none has been found. The primary duty of a prosecutor is to seek justice, not merely to convict. Code

(1964); and subsequent representation of an opposing party in the same litigation; *Waters* v. *Western Company of North America,* 436 F.2d 1072, 1073 (10th Cir. 1971); none of which is included in the issues presented by this case. These cases invoke the prohibitions of Canon 5, which is not at issue in this case. See footnote 1, supra. Two cases cited by the defendant are inapplicable because only one attorney and not the whole office was disqualified. *Emle Industries, Inc.* v. *Patentex, Inc.,* 478 F.2d 562, 574 (2d Cir. 1973); *Estep* v. *Johnson,* supra, 1327.

of Professional Responsibility, EC 7-13; Practice Book, 1978, p. 37. Although rigid application of the law firm disqualification rule might afford an easy solution, the rule has been subject to severe criticism. *NCK Organization Ltd.* v. *Bregman,* supra, 135–36 (Mansfield, J., concurring); "Unchanging Rules in Changing Times: The Canons of Ethics and Intra-firm Conflicts of Interest," 73 Yale L.J. 1058 (1964); American Bar Assn., Committee on Ethics and Professional Responsibility, Formal Opinion 342, November 24, 1975.[3] It can be argued that withdrawal of the entire law firm, here the entire state's attorney's office, when

---

[3] Formal Opinion 342 was expressly rejected in *Armstrong* v. *McAlpin,* 606 F.2d 28 (2d Cir. 1979) for reasons which are inapplicable to this case. In *Armstrong* the law firm representing the plaintiff conceded that one of its newly made partner's prior personal involvement in an SEC investigation as assistant director of the commission's division of enforcement required his disqualification, because that investigation resulted in the filing of a complaint by the SEC against the defendant. The court disqualified the entire firm as well under DR 9-101 (B) which forbids a lawyer's acceptance of private employment in a matter in which he had substantial responsibility while he was a public employee, and DR 5-105 (D) which provides that where a lawyer is required to decline employment under a disciplinary rule, no partner, associate, or any other lawyer affiliated with him or his firm may accept or continue such employment. The court expressed concern that the lawyer's employment history and the subsequent involvement of his firm had afforded him an opportunity to handle a legal matter, here the government investigation, so as to enhance the prospect of private employment in the future. Id., 32–33. There is no likelihood that Sperandeo accepted employment in the 1966 civil action, which has resulted in his disqualification, with an eye toward the opportunity to prosecute Reginald Jones twelve years later. The court's holding in *Armstrong* was necessitated by the identity of subject matters involved in the lawyer's former and present endeavors: the investigation led to the lawsuit, creating a conflict of interest within a lawsuit under Canon 5. Here the defendant has alleged a violation of the standard of confidentiality of Canon 4. This does not require rejection of the standards adopted by the American Bar Association in Formal Opinion 342.

the slightest chance of betrayal of confidential communications exists might better preserve the integrity of the judicial system. But a rule this broad would result in many unnecessary withdrawals, limit mobility in the legal profession, and restrict the state in the assignment of counsel where no breach of confidentiality has in fact occurred. See "Attorney's Conflict of Interests: Representation of Interests Adverse to that of Former Client," 55 B.U. L. Rev. 61, 64 (1975). In view of the unchallenged findings of fact in this case, it cannot be said that the court abused its discretion in denying the motion to disqualify all the prosecutors.

There is error in part, the judgment is set aside and the case is remanded to enter an order disqualifying only Sperandeo from participating in the prosecution of this case.

In this opinion BOGDANSKI and HEALEY, Js., concurred.

COTTER, C. J. (dissenting). I disagree in the result and would suggest that the state's attorney invoke the jurisdictional provision in General Statutes § 51-281 to permit another state's attorney to proceed with the prosecution of this matter. It is evident that another state's attorney would be available to conduct the prosecution and there would be no reason to invoke the alternative course provided in § 51-277. The resolution of this matter involves a policy judgment and another state's attorney should continue with the prosecution without any suggestion, intimation or insinuation of impropriety.

I would reaffirm the oft iterated principles enunciated in *Low* v. *Madison,* 135 Conn. 1, 5–10, 60 A.2d

774, and apply the standards articulated therein to the situation where a public official acts in a prosecutorial capacity in which the functional interests or relationship may affect the office and create an appearance of possible conflict.

Although there has been no showing to the present of conduct evincing improper motives, bad faith, clear abuse of power or plain disregard of duty, since the potentiality of an aura or an appearance of divided loyalty which would create a disqualifying factor under the strict and scrupulous standards of *Low* is certainly possible, the more appropriate course to take would be to act under General Statutes § 51-281. Such a course would avoid any possible charge of impropriety under *Low*. I do not indulge in an assumption that public officials have acted dishonorably, but I would follow required standards involving a philosophy of conduct in which patent fairness and impartiality are fundamental. *Daly* v. *Town Plan & Zoning Commission,* 150 Conn. 495, 499, 191 A.2d 250.

Anything which tends to weaken public confidence is against public policy. *Kovalik* v. *Planning & Zoning Commission,* 155 Conn. 497, 498–99, 234 A.2d 838. The policy we have adopted heretofore is directed against the evil inherent in the creation of a situation which weakens public confidence. *Schwartz* v. *Hamden,* 168 Conn. 8, 18, 357 A.2d 488. No room should be given for suspicion or cavil; therefore I am constrained to dissent.

In this opinion PETERS, J., concurred.