DONALD FIDDELMAN *v.* POPCORN REDMON
(10798)

DALY, LAVERY and SCHALLER, Js.

---

[19] See footnote 18, supra.

Argued February 22—decision released May 4, 1993

*Arnold H. Rutkin,* with whom, on the brief, was *Kathleen A. Hogan,* for the appellant-appellee (plaintiff).

*Richard L. Albrecht,* for the appellee-appellant (defendant).

*Elizabeth T. Sharpe,* for the minor children.

SCHALLER, J. In this dissolution of marriage action, the plaintiff appeals and the defendant cross appeals from various orders of the trial court. The plaintiff claims that the trial court improperly entered orders regarding (1) the disposition of the marital home and (2) an allegedly indefinite custody arrangement.[1] The defendant claims that the trial court improperly denied her motion to open and set aside the judgment as it pertains to custody and visitation. We affirm the judgment of the trial court.[2]

---

[1] The plaintiff specifically challenges a custody order that the parties have styled a "birdnesting arrangement." Hereinafter, we will refer to this order as a birdnesting arrangement.

[2] At oral argument, the plaintiff expressly abandoned his third claim that the trial court improperly entered orders regarding the payment of alimony and child support. We accept the defendant's withdrawal of this claim and will not consider it further. *State* v. *Barlow,* 30 Conn. App. 36, 37 n.2, 618 A.2d 579 (1993).

The parties to this appeal were married on July 2, 1984. They have two children, born in 1986 and 1987. In 1989, the plaintiff brought this action for dissolution of the marriage. The case proceeded to trial as a fully contested matter in the spring of 1991. Following a fifteen day trial, the trial court issued its memorandum of decision on June 13, 1991, and rendered judgment accordingly. The plaintiff appealed.

On November 22, 1991, the defendant filed a motion to open and set aside the judgment claiming that a conflict of interest involving a prior attorney-client relationship had tainted the court's judgment. After a hearing, the court denied the defendant's motion. The defendant brought a cross appeal challenging the court's denial of the motion.[3]

I

THE PLAINTIFF'S APPEAL

A

The plaintiff first contends that the trial court's order regarding the disposition of the marital home did not reflect a valid stipulation between the parties. In the course of trial, the parties entered into a stipulation describing a process by which they would sell their marital home. Pursuant to the stipulation, the parties agreed to list the house for sale immediately at a price of $1.9 million, and "if they both agree, it could be at a price higher than $1,900,000." The stipulation also stated that "the court would maintain continuing jurisdiction to solve any disputes with respect to the listing or selling price." The court accepted the stipulation, and the parties opted not to adduce testimony concerning the value of the property.

In its memorandum of decision, the trial court ordered the parties to list the house for immediate sale

---

[3] Additional facts will be set forth where pertinent.

with a mutually acceptable listing broker at an initial price of $1.9 million. The order did not, however, include a term allowing the parties to agree on a price exceeding $1.9 million. The judgment further provided that "in the event the property shall be listed for more than ninety days at a specific listing price and there shall be no acceptable offer made, the parties shall endeavor to agree upon a lesser listing price, and in the event the parties cannot so agree, this court shall retain continuing jurisdiction to order a diminished listing price."

"A judgment rendered in accordance with . . . a stipulation of the parties is to be regarded and construed as a contract." *Barnard* v. *Barnard,* 214 Conn. 99, 109, 570 A.2d 690 (1990); *Zivic* v. *Zivic,* 26 Conn. App. 5, 7, 596 A.2d 475 (1991). We review a trial court's construction of such an agreement as an issue of fact subject to the clearly erroneous standard. *Barnard* v. *Barnard,* supra; *Zivic* v. *Zivic,* supra, 7–8. " 'A contract is to be construed as a whole and all relevant provisions will be considered together.' " *Barnard* v. *Barnard,* supra, quoting *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 407, 365 A.2d 1086 (1976). "In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties." (Internal quotation marks omitted.) *Sturman* v. *Socha,* 191 Conn. 1, 10, 463 A.2d 527 (1983).

In this case, the plaintiff maintains that the trial court improperly deviated from the stipulation by omitting a provision allowing for an increased listing price. Although the defendant argues that this matter is moot, she consents "to a correction in the Judgment in this regard." Because the issue is not moot[4] and because

[4] The defendant argues that the issue is moot because the initial listing price at $1.9 million has expired and because the plaintiff will not list the

the parties consent to a correction in the judgment, we remand this matter to the trial court. Ultimately, the amended order must reflect the terms of the stipulation and allow for a listing price that exceeds $1.9 million.

The plaintiff also challenges the court's order that the parties return to the court every ninety days in the event that they cannot agree on a reduced price. The plaintiff posits that, contrary to the stipulation, the order requires a reduced price every ninety days. We disagree.

The plaintiff ignores the language in the stipulation that grants the "court *continuing jurisdiction* to solve disputes with respect to the listing or selling price." (Emphasis added.) Under this term, the parties authorized the court further to refine the agreement as it pertained to the setting of a listing or selling price. The order does not, as the plaintiff suggests, *require* a reduced price every ninety days. Rather, if the parties cannot agree on a reduced price after ninety days, then the court will conduct a hearing on the matter to determine the value of the property for purposes of listing and sale. We do not read the order as requiring a reduced price if, after a hearing on the matter, evidence conclusively establishes a market value of the property at or above the existing price. We conclude that this

---

house for sale until this appeal has been resolved. Although the house is no longer on the market, this does not render the issue moot. Rather, the issue raised by the plaintiff regarding the sale of the house is capable of repetition yet evading review. The house is certain to be listed for sale in the immediate future. Further, if we refuse to address the court's judgment at this time, it is conceivable that the listing will again expire and again prevent our review. Under such circumstances, the mootness doctrine does not deprive this court of jurisdiction. See, e.g., *Perry* v. *Perry,* 222 Conn. 799, 803, 611 A.2d 400 (1992); *Schallenkamp* v. *DelPonte,* 29 Conn. App. 576, 580, 616 A.2d 1157 (1992), cert. granted, 224 Conn. 928, 619 A.2d 851 (1993).

aspect of the court's order is not clearly erroneous but rather reflects a proper interpretation of the parties' stipulation.

B

The plaintiff next asserts that the trial court improperly ordered the parties to continue a so called birdnesting arrangement. Under this birdnesting plan, "each party shall have the exclusive use and occupancy of [the marital home] during such period of time that the children are residing with that party." The order expressly stated that the arrangement would last "[u]ntil the sale and closing on the . . . property, or until the defendant wife elects to vacate said premises, whichever event shall first occur . . . ."

We note initially that a trial court is accorded wide discretion in domestic relations cases. "In order to conclude that a trial court abused its discretion in a domestic relations case we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Watson* v. *Watson,* 221 Conn. 698, 712, 607 A.2d 383 (1992). A reviewing court must indulge every reasonable presumption in favor of the correctness of the trial court's action to determine ultimately whether the court could reasonably conclude as it did. *Gallo* v. *Gallo,* 184 Conn. 36, 44–45, 440 A.2d 782 (1981). This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position " 'to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant.' " *Leo* v. *Leo,* 197 Conn. 1, 4, 495 A.2d 704 (1985); *Tutalo* v. *Tutalo,* 187 Conn. 249, 251, 445 A.2d 598 (1982).

In this case, the trial court did not abuse its discretion in ordering the temporary continuation of the bird-

nesting arrangement. The plaintiff attacks this aspect of the court's order as (1) indefinite in its duration and (2) inconsistent with public policy. Both challenges, however, are unavailing. First, the plaintiff's indefiniteness argument ignores the fact that the sale of the property necessarily will terminate the birdnesting plan. We are satisfied that, by its order, the court has endeavored to play an active role in expediting the disposition of the property. While we cannot conclude that the birdnesting arrangement is certain to expire on any specific day, it is clear that it will be shortlived.

Moreover, the public policy concerns offered by the plaintiff are inapplicable in this case. Particularly, the plaintiff points to the stated policy behind dissolution orders that the state "only permits a divorce to be granted when . . . conditions are found to exist, in respect to one or the other of the named parties, which seem to the legislature to make it probable that the interests of society will be better served and that parties will be happier, and so better citizens, separate, than if compelled to remain *together*." (Emphasis added.) *Casale* v. *Casale*, 138 Conn. 490, 492, 86 A.2d 568 (1952). According to the plaintiff, the trial court's order of dissolution cannot be squared with its order requiring the parties temporarily to share the same residence. This argument is specious.

The plaintiff fails to note that under the terms of the order the parties will not be residing in the same residence *together*. Rather, the order expressly states that each party "shall have *exclusive* use and occupancy of said premises." This exclusive use and occupancy coincides with the period of time that each party will reside with the children according to the custody orders. The bottom line is that the court has not ordered the parties to live *together*. We therefore conclude that the temporary birdnesting arrangement is not the product of an abuse of discretion.

## II

### THE DEFENDANT'S CROSS APPEAL

#### A

Turning to the defendant's cross appeal, we address the issue whether the trial court improperly denied the defendant's motion to open and set aside the judgment. The defendant's cross appeal is predicated on an alleged conflict of interest that purportedly tainted the trial court's custody and visitation orders. The following facts are pertinent to the defendant's cross appeal.

For several months in 1987, Attorney Gaetano Ferro, counsel for the minor children, represented Suzanne Sumner, the family relations officer, in a dissolution action. Subsequent to this brief period of representation, neither Ferro nor Sumner took any steps to revive their attorney-client relationship. In 1990, after the plaintiff filed the pending dissolution action, the court appointed Ferro, by agreement of the parties, to serve as independent counsel for the minor children. That same day, the court referred this case to the family relations office to conduct a custody study. The family relations office in turn assigned the matter to Sumner.

In the spring of 1991, when the court heard evidence on the pending dissolution action, Sumner testified and recommended that the parties have joint custody of the children and that the plaintiff have the final authority to make major decisions concerning the welfare of the children. Ferro extensively examined Sumner as a witness and, in his closing argument, substantially adopted her recommendation. After attorneys for the plaintiff and the defendant vociferously cross-examined Sumner, they argued that the court should fashion a custody order that differed from that recommended by Sumner. Specifically, each sought an award of sole custody of the minor children.

In its memorandum of decision, the court ordered that the plaintiff have sole legal custody subject to several significant conditions. Among these conditions, each party was authorized to make "day-to-day decisions" for the children while they resided with that party. The court further vested the plaintiff with the ultimate authority to make major decisions affecting the welfare of the children.

In October, 1991, the defendant learned of the former attorney-client relationship of Ferro and Sumner. She then filed a motion to open and set aside the court's judgment. The defendant argued that the judgment was improper because the prior attorney-client relationship of Ferro and Sumner thwarted the defendant's efforts to obtain a custody order that reflected her position at trial. The court conducted a hearing to explore the defendant's concerns. In the course of testimony, counsel for the plaintiff asked Ferro, "Can you tell me whether or not in your opinion your former representation of Ms. Sumner entered in any way to your role as attorney for the minor children in the Fiddelman, Redmon case?" Ferro responded, "Absolutely not."[5] At the conclusion of the hearing, the court orally rendered its decision to deny the defendant's motion. This cross appeal ensued.[6]

The defendant asserts that the former attorney-client relationship between Ferro and Sumner created an

[5] Sumner did not testify at the hearing on the motion to open and set aside the judgment. Apparently, Sumner is no longer in this jurisdiction.

[6] We note that the trial court orally rendered its decision after hearing evidence on the matter. The trial court neither issued a written memorandum nor transcribed and signed its oral decision. Although not fully complying with Practice Book § 4059, the court did issue a detailed statement of its findings and conclusions in connection with its decision. Because the court's decision is sufficiently detailed and concise we will review the defendant's claim so as not to "exalt form over substance." *State* v. *Rios,* 30 Conn. App. 712, 714, 622 A.2d 618 (1993); *State* v. *Rivera,* 30 Conn. App. 224, 225 n.1, 619 A.2d 1146 (1993).

appearance of impropriety and compromised the integrity of the court's action in this case. We disagree.

"The Superior Court has inherent and statutory authority to regulate the conduct of attorneys who are officers of the court." *State* v. *Jones,* 180 Conn. 443, 448, 429 A.2d 936 (1980), overruled in part, *State* v. *Powell,* 186 Conn. 547, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut,* 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982). We accord wide discretion to a trial court's ruling on a motion for disqualification of counsel for conflict of interest. *State* v. *Jennings,* 216 Conn. 647, 654–55, 583 A.2d 915 (1990). In determining whether the trial court abused its discretion, we indulge every reasonable presumption in favor of the correctness of the court's decision. Id., 655; *State* v. *Jones,* supra.

Unlike the previously cited disqualification cases, here the conflict of interest claim was presented to the trial court *after* the conclusion of the trial. The defendant could not raise this issue earlier because she did not learn of the Ferro-Sumner relationship until after the court had rendered judgment. We therefore see no reason to diverge from our standard of review in disqualification cases simply because the trial court was presented with the issue at a different stage in the proceedings. Ultimately, the issue is the same, namely, whether the trial court abused its discretion in rejecting the defendant's claim that a conflict of interest existed owing to a prior attorney-client relationship.

A conflict of interest based on a prior attorney-client relationship exists only if the moving party establishes that the attorney has since accepted employment that is " 'adverse to the interests of a former client on a matter substantially related to the prior litigation.' " *State* v. *Bunkley,* 202 Conn. 629, 652, 522 A.2d 795 (1987). A substantial relationship is found to exist upon

a showing that "the relationship between the issues in the prior and present cases is 'patently clear' or where the issues are 'essentially the same.' " Id.

In this case, the trial court acted well within its discretion in rejecting the defendant's claim that a conflict of interest undermined the custody and visitation orders. Ferro's attorney-client relationship with the minor children was in no way adverse to his prior representation of Sumner. In fact, the court appointed both Ferro and Sumner to serve largely a similar function in this litigation, namely to serve independently the best interests of the minor children.

Further, whether Ferro chose to contradict or adopt Sumner's testimony was a decision that had nothing to do with the adequacy of Ferro's previous representation of Sumner. Sumner's case had long since been resolved, and her legal representation by Ferro had ceased three years before the present case. Sumner never once indicated any concern that Ferro's involvement in this case jeopardized her former attorney-client relationship. Significantly, there is no indication that confidential communications arising from the former relationship were of any relevance to the pending dispute.

With respect to his representation of the minor children, the record reveals that Ferro strenuously advocated their best interests. We note, moreover, that the children, now represented by new counsel, have chosen not to join in the defendant's cross appeal. Without their involvement in this appeal, we presume that the children are fully satisfied with the court's disposition of the case. Moreover, when asked whether Sumner's role as a witness compromised his independent judgment, Ferro stated emphatically that it did not do so. The trial court in its discretion was entitled to credit this testimony in support of its decision to reject the defendant's motion to open and set aside the judgment.

Finally, the issues involved in the trial of this case were not related to those involved in Sumner's case. The only similarity is that both cases were dissolution actions. There is no basis on which we can conclude that this case is substantially related to that involved in Ferro's former representation of Sumner. Precisely because the two matters are wholly unrelated, no situation ever arose in which the confidential communications between Ferro and Sumner were pertinent to Ferro's representation of the minor children. In short, we are not persuaded that Ferro's prior representation of a witness created a conflict of interest in this case. We thus reject the defendant's claims that the Ferro-Sumner relationship tainted the proceedings and obliged Ferro to disclose this relationship to the court.[7]

## B

The defendant also claims that Ferro's prior relationship with the plaintiff's trial attorney, Arthur Balbirer, created an appearance of impropriety. Specifically, the defendant points to the fact that Ferro and Balbirer had been law partners from 1978 to 1985 and had coauthored legal articles. This fact was known to the defendant at all critical phases of the dissolution proceeding.[8] The defendant, however, did not raise this issue until October, 1991, well after the court had rendered judgment on the matter. The defendant raised this claim in support of her motion to open and set aside the judgment. In the course of a hearing on the motion, the parties adduced extensive testimony concerning this particular relationship.

---

[7] It is, of course, preferable to err on the side of disclosure. Because the trial court, however, conducted a thorough postjudgment hearing on the matter and properly rejected the defendant's claim that a conflict of interest existed, there is no basis from which we can conclude that Ferro's nondisclosure undermined the custody and visitation orders.

[8] At the hearing on the defendant's motion to open and set aside the judgment, counsel for the defendant agreed with the court that everyone at trial was aware of the prior relationship between Ferro and Balbirer.

Our Supreme Court has criticized the practice whereby an attorney, cognizant of circumstances giving rise to an objection before or during trial, waits until after an unfavorable judgment to raise the issue. "We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." *Timm* v. *Timm,* 195 Conn. 202, 205, 487 A.2d 191 (1985); see also *Bielen* v. *Bielen,* 12 Conn. App. 513, 515, 531 A.2d 941 (1987) (when counsel has full knowledge of improper conduct *before* judgment, failure to object at time of knowledge precludes review of objection made *after* unfavorable ruling).

The decision in *Timm* v. *Timm,* supra, is particularly analogous to the case before us. There, a trial referee participated in settlement conferences and thereafter presided at a trial involving the same case. The defendant claimed that the referee's involvement at both phases of the litigation tainted the referee's disposition of the case. The Supreme Court disagreed. Specifically, the court held that "[t]he conduct of the defendant in this case, in failing to raise the issue of the referee's disqualification either before or during the trial, can be construed as the functional equivalent of 'consent in open court' to [the judge's] presiding over the trial." Id.

The analysis in *Timm* applies with equal force in the present case. Unlike, the Ferro-Sumner relationship, discussed previously, the Ferro-Balbirer relationship was known to all parties prior to the commencement of the trial. Notwithstanding this knowledge, the defendant chose not to "cry foul" until after the court rendered judgment. Having known of the Ferro-Balbirer relationship throughout the proceedings, the defendant was required to raise this issue at an earlier

point if she wanted to preserve it. Her failure to do so precludes our review of this challenge.[9]

The judgment is affirmed, and the case is remanded with direction to modify the judgment to reflect the agreement of the parties regarding the listing price of the marital home.

In this opinion the other judges concurred.

---

[9] If we were to reach the merits of this claim, we would conclude that the trial court properly denied the motion to open and set aside the judgment. The court considered extensive evidence on the matter, including testimony indicating that the partnership relationship had long since terminated. It is apparent from the record that the trial court acted within its discretion in rejecting the defendant's motion.