[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISQUALIFY
The plaintiff North Haven Construction Company, Inc., is suing the defendants Banton Construction Company, Inc., and Fidelity and Deposit Company of Maryland for money damages. The defendant Banton was originally represented by the law firm of Pepe and Hazard. The Marcus Law Firm has now been retained by Banton and has filed its appearance in lieu of Pepe and Hazard. The plaintiff has filed a Motion to Preclude, asking that the court preclude the Marcus Law Firm from representing Banton in this litigation. The court will hereafter refer to this as a motion to disqualify.
The facts that have given rise to the motion to disqualify are not disputed. The plaintiff has been represented throughout this litigation by Attorney Dominic Caciopoli. Mr. Caciopoli is a friend of David Doyle, an attorney with the Marcus Law Firm. Before the Marcus Law Firm became involved, Mr. Caciopoli talked about this case with Mr. Doyle on several occasions on an informal basis. Mr. Caciopoli described these conversations as ones in which he brainstormed with Mr. Doyle about the case. During these informal consultations, Mr. Doyle understood that he was offering advice to Mr. Caciopoli as a fellow professional.
Mr. Doyle was not retained as an attorney or a consultant by North Haven Construction and did not expect to be so retained. According to Mr. Caciopoli, during a chance encounter in the courthouse, Mr. Doyle was once introduced to a representative of North Haven Construction as someone with whom Mr. Caciopoli had "brainstormed." Aside from that one brief introduction, Mr. Doyle had no relationship whatsoever with the client. He conducted no interviews with any officer or employee of North Haven Construction.
Mr. Doyle did not reveal any information from these consultations to any member of the Marcus Law Firm. In fact, the Marcus Law Firm only became aware that such consultations had occurred when the senior partner Edward Marcus announced to the rest of the firm that the firm was likely to be retained by North Haven Construction in this case. Mr. Doyle then immediately revealed that he had consulted with Mr. Caciopoli about the matter. That fact was made known to Banton Construction who nonetheless retained the Marcus Law Firm with a written proviso in its retainer agreement that Mr. Doyle would have no involvement with the case. CT Page 13243 Further, Mr. Doyle signed an affidavit attached to the defendant's papers in this case attesting to the fact that he has not had and will not have discussions about this matter with any member or employee at the Marcus Law Firm.
The plaintiff's attorney does not dispute these facts. He states for the record that he fully trusts Mr. Doyle to keep confidential all information with which he was formerly entrusted. Nonetheless, Mr. Caciopoli argues that there exists the appearance of impropriety and that the client will always harbor the suspicion that the outcome of this litigation will somehow be compromised by the presence the Marcus Law Firm, with Mr. Doyle as a member, as the legal representatives of the defendant.
Unlike the former Code of Professional Responsibility, the current Rules of Professional Conduct do not use the "appearance of impropriety" as a standard by which to judge whether counsel must be disqualified. Compare Code of Professional Responsibility, Canon 9, amended 1985, with Rule 1.6, Rules of Professional Conduct. Even when the old code was in effect, the courts of Connecticut "rejected the notion that an `appearance of impropriety' was alone a sufficient ground for disqualifying an attorney." See Bergeron v. Mackler, 225 Conn. 391, 399
(1993).
The papers of the plaintiff do not state with any precision what other basis there may be for the proposed disqualification. Had Mr. Doyle represented the plaintiff and then moved to the firm that was representing the defendant, Section (b) and (c) of Rule 1.10 of the Rules of Professional Conduct would guide the court. They provide:
 (b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(2) that is material to the matter.
 (c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless: CT Page 13244
 (1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
 (2) Any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(2) that is material to the matter.
The commentary to Rule 1.10 states the modern view about attorneys moving between firms:
 The fiction that the law firm is the same as a single lawyer is no longer wholly realistic. There are several competing considerations. First, the client previously represented must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the rule of disqualification should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association.
This sub-section of the commentary ends with a suggestion about what type of inquiry the court should undertake in such a circumstance.
 A rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification. Two functions are involved: preserving confidentiality and avoiding positions adverse to a client.
Rule 1.10, Commentary.
Applying such an analysis, and mindful of the instruction in the commentary that the burden of proof should rest with the firm whose disqualification is sought, the court finds no violation of the Rides of Professional Conduct.
First, there was never any attorney-client relationship between Mr. Doyle and North Haven Construction. Because of that fact, Rule 1.10 in its fullest sense does not apply. Because there was no attorney-client relationship, there is no duty of loyalty involved, which is one of the major bases for the Rules in general and this rule in particular. Only the second underpinning of the Rule 1.10 — that regarding CT Page 13245 confidentiality — is relevant.
Second, client confidences are not compromised here. Plaintiff's counsel does not dispute the truth of Mr. Doyle's sworn statements that he has not discussed and will not discuss any of the information exchanged between him and Mr. Caciopoli to anyone in the Marcus Law Firm, nor will he allow himself to become involved in the litigation on behalf of Banton. An analogous, though not identical situation, was presented to the Supreme Court while the old code was in effect in the case of State v. Jones, 180 Conn. 443, 429 A.2d 936 (1980). In Jones, Attorney Sperandeo was a part-time prosecutor who also maintained a private law practice. In the course of his private practice, he represented Reginald Jones in a personal injury case that involved head injuries from a car accident. Thereafter, Reginald Jones was charged with murder and was to be prosecuted by the office of the state's attorney with which Attorney Sperandeo was associated. Moreover, Jones filed a notice that he intended to rely on a defense of mental disease or defect, possibly as a result of the car accident. His defense counsel filed a motion to disqualify Attorney Sperandeo and the entire local office of the state's attorney from the prosecution of Jones. The Supreme Court held that while the disqualification of Attorney Sperandeo was proper, the disqualification of the state's attorney's office in which he worked was unnecessary. The trial court had found, as with Mr. Doyle here, that there had been no confidential information shared with other members of that office. The court noted:
 It can be argued that withdrawal of the entire law firm, here the entire state's attorney's office, when the slightest chance of betrayal of confidential communications exists might better preserve the integrity of the judicial system. But a rule this broad would result in many unnecessary withdrawals, limit mobility in the legal profession, and restrict the state in the assignment of counsel where no breach of confidentiality has in fact occurred.
State v. Jones, 180 Conn. 443, 456 (1980).
The defendant's law firm has carried its burden of proving that Mr. Doyle will adhere to the duty to preserve the confidentiality of any information about North Haven Construction or its litigation strategy that he learned from Mr. Caciopoli. The court orders that Mr. Doyle have no communications with anyone in his firm about that which he has learned concerning North Haven Construction Company in reference to this litigation. The court further orders that he not participate in any way in the representation of Banton Construction in this matter, including CT Page 13246 discussions of tactics and strategy.
The Motion to Preclude the Marcus Law Firm from continuing to represent Banton Construction Company in this matter is, however, denied.
Patty Jenkins Pittman, J.