[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PETITIONER'S APPLICATION FOR ORDER OF IMMUNITY OR MOTION TO DISQUALIFY
The petitioner Eddie Bud Player has instituted this action for writ of habeas corpus, alleging that he has been unlawfully confined by the respondent warden in a facility of the Connecticut Department of Correction. The petitioner was convicted after a jury trial of sale of narcotics, in violation of Conn. Gen. Stat. § 21a-278(b); possession, in violation of Conn. Gen. Stat. § 21a-279(a); and sale of narcotics within 1500 feet of a school, in violation of Conn. Gen. Stat. § 21a-278a(b). The petitioner was sentenced to a total effective sentence of eight years.
The main witness against the petitioner at his criminal trial was Vera Jane Pottle. She testified under oath at Mr. Player's criminal trial that she had bought drugs from the petitioner and had acted as a police informant. At the beginning of the petitioner's first trial on this habeas matter before the court (Alander, J.), Ms. Pottle stated that she had only testified as she had in the criminal trial because she wanted to get into a residential drug treatment program and regain custody of her children, and felt that she would receive the support of the state's attorney's staff in achieving these results if she testified that the petitioner had sold drugs to her. The judge then ordered a recess of the case.
When the case resumed later that month, the court cautioned Ms. Pottle that her two inconsistent versions of events under oath, the first at the petitioner's criminal trial and the second at the habeas trial, could be self-incriminating and suggested that she obtain counsel. The court continued the case to allow her to do so. When the habeas trial resumed CT Page 1026 two weeks later, Ms. Pottle appeared with counsel and invoked her rights under the Fifth Amendment, refusing to answer questions about her prior testimony or the events resulting in the criminal charges against Mr. Player. Having already heard some of her testimony in the habeas case before the invocation of the Fifth Amendment, the judge then declared a mistrial of the habeas corpus action.
The habeas corpus case was then referred to the undersigned for trial. As a preliminary matter, the petitioner has filed a motion seeking either to have the court order the state's attorney to grant immunity to Ms. Pottle for any criminal charges for perjury that may arise because of her impending testimony in this habeas case or to have the office of the state's attorney disqualified and replaced by the appointment of a Special State's Attorney who, presumably, could more objectively determine whether a grant of immunity to Ms. Pottle was appropriate. In his brief, the petitioner suggests that the Office of the Attorney General should be substituted.
The scenario would be thus. The court would compel the state's attorney to grant immunity to Ms. Pottle from a possible perjury prosecution, or substitute the Attorney General's office who would grant such immunity. Ms. Pottle would then testify, under oath but with no penalty attached to potentially untruthful testimony, that Mr. Player did not sell drugs to her.
 THE GRANT OF IMMUNITY
The problem is that there is absolutely no authority for relieving a petitioner's witness in a civil habeas corpus proceeding of the compulsion to testify truthfully in a court of this State. The authority to compel testimony of a witness in the face of that witness's invocation of the Fifth Amendment shield against self-incrimination is governed by Conn. Gen. Stat. Sec. 54-47a, which provides:
(a) Whenever in the judgment of the Chief State's Attorney, a state's attorney or the deputy chief state's attorney, the testimony of any witness or the production of books, papers or other evidence of any witness (1) in any criminal proceeding involving narcotics, arson, bribery, gambling, election law violations, felonious crimes of violence, any violation which is an offense under the provisions of title 22a, corruption in the executive, legislative or judicial branch of state government or in the government of any political subdivision of the state, fraud by a vendor of goods or services in the medical CT Page 1027 assistance program under Title XIX of the Social Security Act amendments of 1965, as amended, any violation of chapter 949c, or any other class A, B or C felony or unclassified felony punishable by a term of imprisonment in excess of five years for which the Chief State's Attorney or state's attorney demonstrates that he has no other means of obtaining sufficient information as to whether a crime has been committed or the identity of the person or persons who may have committed a crime, before a court or grand jury of this state or (2) in any investigation conducted by an investigatory grand jury as provided in sections 54-47b to 54-47g, inclusive, is necessary to the public interest, the Chief State's Attorney, the state's attorney, or the deputy chief state's attorney, may, with notice to the witness, after the witness has claimed his privilege against self-incrimination, make application to the court for an order directing the witness to testify or produce evidence subject to the provisions of this section.
 (b) Upon the issuance of the order such witness shall not be excused from testifying or from producing books, papers or other evidence in such case or proceeding on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled to testify or produce evidence, and no testimony or evidence so compelled, and no evidence discovered as a result of or otherwise derived from testimony or evidence so compelled, may be used as evidence against him in any proceeding, except that no witness shall be immune from prosecution for perjury or contempt committed while giving such testimony or producing such evidence. Whenever evidence is objected to as inadmissible because it was discovered as a result of or otherwise derived from compelled testimony or evidence, the burden shall be upon the person offering the challenged evidence to establish a source independent of the compelled testimony or evidence.
First, Connecticut courts have rejected the argument that Conn. Gen. Stat. § 54-47a allows or compels a grant of immunity to defense CT Page 1028 witnesses. State v. McIver, 201 Conn. 559, 566-68 (1986). Second, the statute is clear on its face that it applies only in the trial of certain types of criminal cases and in grand jury proceedings. Third, it is the state's attorney, and not the court, who has the sole discretion to grant or withhold immunity, through the procedure of requesting an order of the court compelling the witness to testify, which triggers the immunity in sub-paragraph (b) of the statute. Fourth, the statute defines a grant of immunity to exclude immunity from prosecution for perjury or contempt while giving the testimony or producing the evidence under the grant.
This latter feature of the statute, and indeed of the whole concept of immunity in order to compel testimony, is crucial. The grant of immunity which the petitioner seeks for Ms. Pottle is not one related to other unlawful conduct of the witness, such as possessing drugs or abetting criminal conduct. Rather the grant of immunity sought here is to relieve the petitioner's witness from any fear of adverse consequences should her testimony now be different from her former testimony. The petitioner's request is that the witness essentially get a judicial pass to recant her former testimony.
One can well imagine the reverberations were this to become commonplace. Witnesses, and criminal defendants against whom they offered testimony, would know that in the event of conviction, contradictory testimony from that same witness could later be offered in the defendant's habeas corpus action under a compelled grant of immunity with no adverse consequences to the witness. Such a scenario would leave the state, and the court, with absolutely no way to ensure that any testimony was trustworthy, either at the criminal trial or at the habeas trial. It would undermine the integrity of the criminal justice system and the reliability of all verdicts in criminal cases, both acquittals and convictions.
Even in cases where grants of immunity are given to state's witnesses to compel them to testify, such grants do not include immunity from prosecution for false testimony. One can only imagine the outcry from the criminal defense bar, and the likely reversal on appeal, if a conviction were based on testimony from a witness who had been granted immunity from any consequences of having testified falsely in the trial that resulted in the conviction.
 THE DISQUALIFICATION OF THE OFFICE OF THE STATE'S ATTORNEY
The position of the petitioner is that the Office of the State's Attorney should be disqualified and replaced so that a more dispassionate representative of the state can analyze whether to grant immunity to Ms. Pottle. The claim is that the state's attorney is responsible for having CT Page 1029 persuaded Ms. Pottle to testify falsely in the criminal trial by leading her to believe that she would have the support of that office's staff in her quest to be admitted to a drug treatment program if she supported their version of the circumstances under which the petitioner was arrested.
The problem with the first of these positions is that, once again there is no authority for the disqualification of the Office of the State's Attorney in such a situation. The state's attorney who now represents the warden in this habeas corpus proceeding is not the same state's attorney who represented the state at the petitioner's criminal trial. Even in cases where there is a wholly legitimate reason for the disqualification of either an individual state's attorney or several members of one office, there is no authority for the wholesale disqualification of the entire structure of the Office of the State's Attorney. See, e. g., Statev. Jones, 180 Conn. 443 (1980).
The problem with the second proposition is that Ms. Pottle had already given information to the police that the petitioner had sold drugs to her before she had any contact with the state's attorney. It was this information that led to the petitioner's arrest. At the time of trial Ms. Pottle was told by the staff of the state's attorney's office, not surprisingly, that they expected her testimony to be consistent with her prior statements to the police. There is absolutely nothing to indicate misconduct by the state's attorney's office.
 CONCLUSION
There is no authority and no rationale for compelling a grant of immunity to Vera Jane Pottle in this matter. Neither has the petitioner shown any reason whatsoever for the disqualification of the office of the state's attorney. The petitioner's Application for Order of Immunity, or In the Alternative, Motion to Disqualify is denied.
Patty Jenkins Pittman, Judge