MICHAEL BERGERON ET AL. *v.* VIOLET D. MACKLER
(14495)

CALLAHAN, BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued January 14—decision released April 20, 1993

*Houston Putnam Lowry,* for the plaintiffs in error.

NORCOTT, J. This is a writ of error[1] from an order of the Superior Court granting the request of the

---

[1] A writ of error may be brought to this court pursuant to Practice Book § 4143 and General Statutes § 52-272 et seq. Practice Book § 4143 provides in relevant part: "Writs of error in matters of law only may be brought from a final judgment of the superior court to the supreme court. . . .

"(b) No writ of error may be brought in any civil or criminal proceeding for the correction of any error where . . . the error might have been reviewed by process of appeal . . . ."

The claim sought to be reviewed by the plaintiffs in error could not have been reviewed by this court by way of appeal because they were not par-

defendant in error (defendant), Violet Mackler, to disqualify counsel for the plaintiffs in error (plaintiffs), Michael Bergeron, James Downey and Michail Campbell. The plaintiffs claim that the trial court improperly disqualified the law firm of Tarlow, Levy & Droney, P.C. (firm), from representing them as nonparty witnesses in a marital dissolution action relying on the firm's previous representation of the defendant in a residential house closing. The plaintiffs claim that the trial court improperly relied upon the "appearance of impropriety" standard when it disqualified the firm from representing them without addressing the relationship between the prior and the present representation.[2] We agree and reverse the judgment of the trial court.

ties in the underlying marital dissolution action. Only an aggrieved *party* may appeal from a final judgment of the trial court. See Practice Book § 4000. Consequently, a writ of error is the proper vehicle for review of the plaintiffs' claim.

As noted above, a writ of error, like an ordinary appeal, requires a final judgment. Practice Book § 4143; *State* v. *Ross,* 189 Conn. 42, 51, 454 A.2d 266 (1983). Although ordinarily an order disqualifying counsel is not immediately appealable; see *Burger & Burger, Inc.* v. *Murren,* 202 Conn. 660, 522 A.2d 812 (1987); we conclude that, under the present circumstances, the trial court's order disqualifying counsel is a final judgment for purposes of appeal.

In *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983), we stated that an order, otherwise interlocutory in nature, is a final judgment for purposes of appeal if "the order or action so concludes the rights of the parties that further proceedings cannot affect them." This inquiry "is not whether [the individual] has a right which has been injured, but whether that right can be affected by later trial level proceedings, or by an appeal from a final judgment on the merits." *Burger & Burger, Inc.* v. *Murren,* supra, 667.

Unlike *Murren,* in which the *party* aggrieved by the order disqualifying counsel could have appealed that order after a final judgment had been entered, the plaintiffs in error in the present case have no such remedy. Because they were not parties to the marital dissolution proceedings, they could not have had the claim reviewed by way of appeal. Consequently that "right [cannot] be affected by later trial level proceedings, or by an appeal from a final judgment on the merits." Id.

[2] The plaintiffs also claim that: (1) there was no substantial relationship between the firm's former representation of the defendant and its current

The record discloses the following facts.[3] The plaintiffs are three supoenaed witnesses in the underlying dissolution action known as *Mackler* v. *Mackler,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. FA-90-0373964-S. Philip Mackler (Mackler), the defendant's husband, is an officer and the sole director and shareholder of Bell Food Services, Inc. (Bell Food), and is the president, a director and the majority shareholder of Bell Amusement, Inc. (Bell Amusement). At the time in question, the plaintiffs were business associates of Mackler through either Bell Food or Bell Amusement.[4]

The firm has represented Mackler, Bell Food and Bell Amusement in various matters, and both corporations have normally employed no other counsel. In 1988, the firm represented Mackler and the defendant in connection with the purchase of a house in Glastonbury. The firm has at no other time represented the defendant.

The defendant commenced a dissolution action against Mackler. Although the Glastonbury house was one of the marital assets subject to division in the dissolution action, it was not the focus of additional dispute. During the dissolution action, the defendant noticed the deposition of the plaintiffs, and the plain-

representation of the plaintiffs; and (2) the firm did not have confidential information from the defendant that the defendant's husband did not also have because the firm had represented them both with respect to the real estate closing. Because we conclude that the trial court improperly disqualified the firm on an appearance of impropriety, we need not reach these claims.

[3] We also take this occasion to note that, before 1986, Practice Book § 3090, the predecessor to § 4143, provided that a "writ of error may be used only to review errors apparent on the face of the record." Despite our earlier improvident suggestion in *Commissioner of Correction* v. *Rodriquez,* 222 Conn. 469, 471 n.2, 610 A.2d 631 (1992), that requirement was dropped when § 3090 was completely rewritten as § 4143.

[4] The plaintiffs' writ states that Campbell is president of Bell Food, Downey is secretary and treasurer of Bell Food, and Bergeron is a minority shareholder, a director and the vice president of Bell Amusement.

tiffs filed a motion for a protective order through their counsel, Attorney Houston P. Lowry, who was then a member of the firm. The defendant filed a motion for a hearing regarding the protective order and, as part of that motion, requested that the firm be disqualified from representing the plaintiffs because the firm had represented the defendant and her husband when they had purchased the Glastonbury house.

At a hearing before the trial court, Lowry explained that the only connection the firm had with the defendant was with regard to the house closing. He also stated that the firm had never represented Mackler in connection with the dissolution action, but that it had represented Mackler and the plaintiffs in previous litigation and as general counsel for Bell Foods and Bell Amusement. Counsel for Mackler argued that Lowry's representation of the plaintiffs as officers of Bell Food and Bell Amusement regarding their motion for a protective order had no relation to the firm's past representation of the defendant and therefore did not warrant disqualification.

The trial court ruled that the firm must be disqualified from the case because of the appearance of impropriety arising from the firm's representation of the plaintiffs. In reaching this conclusion, the trial court relied heavily on the defendant's perception that there was some conflict because of Mackler's prior association both with the firm and with the plaintiffs.[5] The trial

---

[5] In response to the argument of Mackler's counsel that the prior and present representations were sufficiently attenuated to deny disqualification of counsel, the trial court commented: "But in the family court arena, Mr. Roisman, when one person feels that there's a conflict, when one doesn't exist, don't we have that problem of appearance of impropriety. And even if there is no legal conflict, that some [judges] using their better judgment have from time to time side stepped cases?"

The court further explained: "[T]he problem we have here is that if Mrs. Mackler feels that things are being done to manuever so that full disclosure isn't being made, and feels there may be a conflict, she perceives this

court also relied on the rationale of *Cleland* v. *Cleland,*
35 Conn. Sup. 215, 404 A.2d 905 (1979), to support its
conclusion that if Cleland would require disqualifica-
tion of the firm from representing Mackler, it would
also apply to disqualify the firm from representing busi-
ness associates of Mackler.[6] When counsel for the plain-
tiffs asked for a clarification of the trial court's order,

conflict whether it's real or not . . . . What we have here I assume, is
a perception that she probably feels that Mr. Mackler being the chairman
of the board or whatever his position is in the corporation, or corporations,
controls the employees. And when the employees are taking the positions
they're taking with the assistance of the corporate counsel, that that con-
flict starts getting closer and closer to the—to this case. . . . [W]hen the
motion for protective order comes in I have to assume and I'm obviously
making some leaps here that may not be justified, but I have to assume
. . . that [Mrs. Mackler] must be very sensitive about this and feel that
somehow Mr. Mackler's controlling which he may not be. But that percep-
tion is there . . . . It seems to me that certainly the safer way to go is
to have somebody else represent these individuals . . . . Somebody who's
independent of Mr. Mackler, otherwise we have this alter ego problem
that—I think probably [u]nfairly cast some doubt or some shadow on Mr.
Mackler's activities when there may be none. They say he may be totally
removed from this, yet somehow she I presume is thinking that he's pull-
ing the strings. So if they had independent counsel, there's less chance that
Mr. Mackler is going to have influence with independent counsel."

[6] In *Cleland* v. *Cleland,* 35 Conn. Sup. 215, 404 A.2d 905 (1979), the trial
court disqualified, in a divorce proceeding, the husband's law firm from
representing the husband on the basis of a conflict of interest arising out
of the firm's prior representation of the wife in matters involving her
finances. The wife contended that the firm's prior representation of her
bore a substantial relation to the divorce proceeding in which financial mat-
ters were being disputed. The trial court agreed and concluded that once
a substantial relationship between the past and current representations was
found, the wife did not need to demonstrate that confidential information
was actually obtained that could potentially be divulged in the subsequent
representation.

Here, the trial court concluded, without anaylzing the nature of the firm's
past representation of the defendant, that disqualification would have been
warranted had the firm attempted to represent Mackler. The court extended
this rationale to the plaintiffs, again without analyzing whether any sub-
stantial relationship existed between the firm's representation of the defend-
ant in a house closing two years earlier and its current representation of
the plaintiffs as witnesses in a divorce action between the defendant and
her husband.

the court indicated that it believed that the disqualification order should apply to any firm that had represented Mackler in the past, regardless of whether it had also represented the defendant.[7]

The plaintiffs claim in their writ of error that the trial court improperly disqualified the firm from representing them solely on the basis of an appearance of impropriety.[8] The plaintiffs argue that the court failed to

[7] The following discourse took place in the trial court when clarification of the order was sought:

"Mr. Lowry: Your Honor, just so I can understand your order and can explain it to the clients involved, you're saying in your last statement that whatever counsel has been selected can never have represented Mr. Philip Mackler any time? . . .

"The Court: I would—again, avoid the appearance of impropriety, within reason and then you don't have that problem. . . . I'm sure you can find a lawyer—there's a chance you'll find a lawyer in the greater Hartford area who did not represent Mr. Mackler, or Bell Industries . . . in the past.

"Mr. Roisman: Or most importantly Mrs. Mackler.

"The Court: Or Mrs. Mackler.

"Mr. Roisman: That's what gives rise to this question in the first place, is whether there was some contact with Mrs. Mackler. . . .

"The Court: Again, if [another firm] for instance, represented Mr. Mackler, didn't represent Mrs. Mackler they wouldn't have a conflict, but the concept of what I'm talking about is going a little bit beyond that.

"Mr. Lowry: I understand that Your Honor, just so I can properly advise my clients, and I can tell you for the record that [another firm] has represented Philip Mackler before, but never Violet Mackler, in connection with various business transactions. So just so I can understand the spirit of your order, [what] you're saying is that even if that's the case, and there's no actual conflict to avoid this appearance that Philip Mackler's pulling the strings behind things, you're saying that they also should not appear for the witnesses?

"The Court: That's what I am suggesting."

The court further added: "All I'm suggesting is Mr. Lowry properly ask me the spirit of the order, the spirit of the order is look around real hard, find a law firm that has not represented Mr. Mackler, if at all possible so that the claim can't be made. I think the claim is not [a] legally proper claim, it's not a legally solid claim, but it's there, why run into it."

[8] The defendant did not file a brief, and therefore this writ of error is being heard on the record and the plaintiffs' brief alone.

Since the institution of this action, the parties to the dissolution action have entered into a property agreement and the dissolution has gone to

apply the applicable test under the Rules of Professional Conduct and to consider whether there was a substantial relationship between the firm's past representation of the defendant and its present representation of the plaintiffs. The plaintiffs contend that, unlike the previously applicable Code of Professional Responsibility, the "appearance of impropriety" standard does not appear in the Rules of Professional Conduct and therefore cannot be the sole basis for disqualifying counsel. We agree.

The trial court has the authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct regarding attorneys. *State* v. *Jones,* 180 Conn. 443, 448, 429 A.2d 936 (1980), overruled in part, *State* v. *Powell,* 186 Conn. 547, 442 A.2d 939 (1982), cert. denied sub nom. *Moeller* v. *Connecticut,* 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982). Since October, 1986, the conduct of attorneys has been regulated also by the Rules of Professional Conduct, which were approved by the judges of the Superior Court and which superseded the Code of Professional Responsibility. *Williams* v. *Warden,* 217 Conn. 419, 432 n.5, 586 A.2d 582 (1991). The trial court has broad discretion to determine whether there exists a conflict of interest that would warrant disqualification of an attorney. *State* v. *Jones,* supra.

Disqualification of counsel is a remedy that serves to " 'enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information.' " *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors Corporation,* 518 F.2d 751, 754 (2d Cir. 1975). In disqualification matters, however, we must be "solicitous of a client's right freely to choose

an uncontested judgment. We therefore raised at oral argument whether this writ of error was moot. We conclude that the plaintiffs' outstanding order for costs against the defendant is sufficient to keep the plaintiffs' writ of error from being moot.

his counsel"; *Government of India* v. *Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir. 1978); mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel and "may lose the benefit of its longtime counsel's specialized knowledge of its operations." Id. The competing interests at stake in the motion to disqualify, therefore, are: (1) the defendant's interest in protecting confidential information; (2) the plaintiffs' interest in freely selecting counsel of their choice; and (3) the public's interest in the scrupulous administration of justice. *Goldenberg* v. *Corporate Air, Inc.,* 189 Conn. 504, 507, 457 A.2d 296 (1983), overruled in part, *Burger & Burger, Inc.* v. *Murren,* 202 Conn. 660, 522 A.2d 812 (1987).

Rule 1.9 of the Rules of Professional Conduct governs disqualification of counsel for a conflict of interest relating to a former client. The rule states that: "A lawyer who has formerly represented a client in a matter shall not thereafter: (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (b) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known."

Rule 1.9 (a) expresses the same standard that we had applied under the Code of Professional Responsibility when a claim of disqualification based on prior representation arose.[9] Thus, an attorney should be disqualified if he has accepted employment adverse to the

---

[9] Under the Code of Professional Responsibility, claims regarding a conflict of interest due to former representation of a client were made under Canon 4, "A Lawyer Should Preserve the Confidences and Secrets of a Client," and Canon 9, "A Lawyer Should Avoid Even the Appearance of

interests of a former client on a matter substantially related to the prior representation. *State* v. *Jones,* supra, 449. This test "has been honed in its practical application to grant disqualification only upon a showing that the relationship between the issues in the prior and present cases is 'patently clear' or when the issues are 'identical' or 'essentially the same.' *Government of India* v. *Cook Industries, Inc.,* [supra, 739–40]." Id.; see also *State* v. *Bunkley,* 202 Conn. 629, 652, 522 A.2d 795 (1987). Once a substantial relationship between the prior and the present representation is demonstrated, the receipt of confidential information that would potentially disadvantage a former client is presumed. *Goldenberg* v. *Corporate Air, Inc.,* supra, 512; *State* v. *Jones,* supra, 450.

Unlike Canon 9 under the Code of Professional Responsibility, however, the Rules of Professional Conduct do not expressly state that a lawyer should avoid the appearance of impropriety. Even when Canon 9 was applicable, we rejected the notion that an "appearance of impropriety" was alone a sufficient ground for disqualifying an attorney. In *State* v. *Jones,* supra, 452–53, we stated that "the appearance of impropriety alone is 'simply too slender a reed on which to rest a disqualification order except in the rarest of cases.' *Board of Education of the City of New York* v. *Nyquist,* 590 F.2d 1241, 1247 (2d Cir. 1979)." See also *State* v. *Bunkley,* supra, 653–54. Although considering the appearance of impropriety may be part of the inherent power of the court to regulate the conduct of attorneys, it will not stand alone to disqualify an attorney

Professional Impropriety." See *Goldenberg* v. *Corporate Air, Inc.,* 189 Conn. 504, 511, 457 A.2d 296 (1983); *State* v. *Jones,* 180 Conn. 443, 448, 429 A.2d 936 (1980), overruled in part, *State* v. *Powell,* 186 Conn. 547, 442 A.2d 939 (1982), cert. denied sub nom. *Moeller* v. *Connecticut,* 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982).

in the absence of any indication that the attorney's representation risks violating the Rules of Professional Conduct.

In the present case, the trial court failed to consider the relationship between the firm's representation of the defendant in a house closing and its representation of the plaintiffs seeking a protective order as witnesses in the defendant's dissolution action. In fact, the trial court stated several times that there did not seem to be anything legally improper about the proceedings, but that disqualification of the plaintiffs' counsel would be the "safer" route considering the defendant's perception that her husband might be controlling the litigation. The court went so far as to suggest that any firm associated with the defendant's husband be disqualified even if that firm had never represented the defendant. The standards for attorney disqualification are directed at protecting client confidences. They may not be used to restrict an individual's ability to select counsel of choice on the basis of nothing more than a litigant's subjective perception that another litigant is influencing the proceedings.

We conclude that the trial court improperly disqualified the plaintiffs' counsel on the basis of an appearance of impropriety without exploring whether the firm's representation of the plaintiffs was substantially related to matters in which the firm had represented the defendant.

The writ is granted and the order of disqualification is reversed.

In this opinion the other justices concurred.