[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Trager Trager for plaintiff. CT Page 6843
Cotter, Cotter Sohon for defendant.
On July 6, 1990, the plaintiffs Fred O'Neill and Steven Fournier initiated this professional malpractice action against the defendant Clarence DiBlasi, Professional Engineer, d/b/a DiBlasi Associates, claiming damages incurred when a retaining wall designed by the defendant collapsed during construction on the plaintiff's property. At the initiation of the suit, the plaintiffs were represented by Attorney Richard J. Joseph. On November 4, 1992, plaintiffs' current counsel, Trager Trager, P.C., filed an appearance for the plaintiffs in lieu of Attorney Joseph's appearance.
On July 2, 1990, the firm of Updike, Kelly, Spellacy, P.C., filed an appearance for the defendant, Clarence DiBlasi. On May 12, 1994, Attorney Gerald McEnery filed an appearance on behalf of Mr. DiBlasi, in addition to the appearance of Updike, Kelly Spellacy, who also represent Mr. DiBlasi. Attorney McEnery also filed a motion to disqualify the plaintiffs' counsel, Trager Trager, based on Trager Trager's potential use of information regarding the defendant, Mr. DiBlasi's, personal finances, which Trager Trager obtained when that firm performed estate planning services for him (Mr. DiBlasi) in 1986. The plaintiffs' counsel submitted a brief in opposition to the motion to disqualify. Although the defendant's counsel filed the motion to disqualify contemporaneously with his appearance in the case, the court file indicates that the defendant, through additional counsel, actively participated in the prosecution of this case with Trager Trager for fifteen months. A hearing on the motion was held on May 31, 1994.
At the hearing, the defendant, Mr. DiBlasi, testified that the law firm of Trager Trager had been his personal counsel between the years of 1984 and 1986, during which time that law firm did estate planning for him and drafted a will for him. Mr. DiBlasi also testified that he had disclosed the extent of his personal assets to the firm in order to effectuate the estate planning and, at the present time, he retains at least 60% of those assets.
 Since October, 1986, the conduct of [Connecticut] attorneys has been regulated by the Rules of Professional Conduct [("RPC")], which were approved by the judges of the Superior Court and which superseded the Code of Professional CT Page 6844 Responsibility. . . . The trial court has broad discretion to determine whether there exists a conflict of interest that would warrant disqualification of an attorney.
Bergeron v. Mackler, 225 Conn. 391, 397, 623 A.2d 489 (1993).
"Rule 1.9 of the Rules of Professional Conduct governs disqualification of counsel for a conflict of interest relating to a former client." Bergeron v. Mackler, supra, 225 Conn. 398. Rule 1.9 of the Rules of Professional Conduct dictates that
 [a] lawyer who has formerly represented a client in a matter shall not thereafter:
 (a) Represent another person in the same or substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client consents after consultation; or
 (b) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.
"After termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with [Rule 1.9]." RPC, Rule 1.9, comment.
The defendant does not argue that the matter in which Trager Trager formerly represented the defendant was "the same or substantially related" to the present matter. The defendant, however, does argue that Trager Trager has "intimate personal knowledge of Mr. DiBlasi's personal assets which will be exposed by an adverse judgment in this case," and, therefore, the defendant moves to disqualify the firm, presumably under RPC Rule 1.9(b). The defendant argues that the information regarding the defendant's assets obtained by Trager Trager during the course of the estate planning done for the defendant could be used to the defendant's detriment if the plaintiffs in the present case obtain a judgment in excess of the defendant's insurance policy.
Plaintiffs' counsel argues that the defendant has waived his right to move to disqualify the firm by failing to raise the issue until 15 months after it appeared in the present case. As noted CT Page 6845 above, Trager Trager filed an appearance in the case on November 4, 1992. The motion to disqualify was not filed until May 12, 1994. The comment to Rule 1.9 notes that "[d]isqualification from subsequent representation is for the protection of clients and can be waived by them." Said comment further states that "a waiver is effective only if there is a disclosure of the circumstances, including the lawyer's intended role in behalf of the new client."
If the plaintiffs were to obtain a judgment against the defendant, Clarence DiBlasi, for an amount in excess of his liability insurance policy, they would possibly seek to satisfy that judgment from individual assets of Mr. DiBlasi. Knowledge of some of these assets could be obtained by the plaintiffs from the fact of their attorney's law firm, Trager Trager, prior representation of the defendant, Clarence DiBlasi. Therefore, the defendant's motion to disqualify the plaintiffs' attorney is granted.
SULLIVAN, JUDGE.