[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO DISQUALIFY(NO. 109)
The plaintiff wife has moved that the law firm of Traystman 
Traystman be disqualified from representing the defendant husband in this action for a dissolution of marriage. She claims a conflict of interest because an attorney in the firm had represented her in post-judgment modification and enforcement proceedings against her first husband.
The facts are not substantially in dispute and are as follows:
The plaintiff obtained a decree dissolving her first marriage in 1982. Attorney Gary Traystman, then a member of the law firm of Traystman Guernsey, and now a member of Traystman 
Traystman, filed an appearance on behalf of the plaintiff in a post-judgment proceeding brought July, 1985, by her first husband to modify child support for her minor son, issue of the first marriage. Attorney Traystman contemporaneously filed on the plaintiff's behalf, a motion to modify visitation and support and a motion to adjudge her first husband in contempt for failure to pay child support.
In August, 1985, Attorney Traystman prepared a financial affidavit for the plaintiff, and in December, 1985, he filed another motion to adjudge her first husband in contempt, this time claiming his failure to maintain medical insurance for the child and pay child support and to find an arrearage. Attorney Traystman participated in several court appearances in the pursuit of the contempt and modification motions. An agreement concerning a current support order modification and the payment of an arrearage was approved by the court in January, 1986, and a CT Page 10894 further agreement was approved by the court June 24, 1986. It appears that Attorney Traystman rendered no services to the plaintiff wife after June 24, 1986. The parties in this case married in 1988.
In the present action, returnable August 23, 1994, the plaintiff seeks a dissolution of the marriage, custody of the minor child issue of this marriage, support, alimony and other relief, as on file. Unsuccessful attempts were made to resolve the disputed issues in this case. The plaintiff moved to disqualify defendant's counsel, Attorney Traystman, by motion dated and filed September 12, 1994.
A trial court has the authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct regarding attorneys. State v. Jones, 180 Conn. 443, 448 (1980), overruled in part on other grounds, State v. Powell, 186 Conn. 547
(1982). Since October, 1986, the Rules of Professional Conduct, which superseded the Code of Professional Responsibility, have also regulated attorneys' conduct. The trial court has broad discretion to determine whether there exists a conflict of interest that would warrant disqualification. State v. Jones, supra.
Disqualification of counsel is a drastic remedy. "[I]t . . . serves to enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information. In disqualification matters, however, we must be solicitous of a client's right freely to choose his counsel, mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel. . . ." (Internal quotations and citations omitted)Bergeron v. Mackler, 225 Conn. 391, 398 (1993).
There are three competing interests at stake in the disqualification of attorneys: (1) the plaintiff's interest in protecting confidential information from disclosure to an adversary in this litigation; (2) the defendant's interest in the free selection of counsel of his choice; and (3) the public's interest in the scrupulous administration of justice. Goldenbergv. Corporate Air, Inc., 189 Conn. 504, 507 (1983), overruled on other grounds, Burger Burger, Inc. v. Murren, 202 Conn. 660
(1987).
Rule 1.9 of the Rules of Professional Conduct governs CT Page 10895 disqualification of counsel for a conflict of interest relating to a former client. The rule states:
 "A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known."
"A conflict of interest based on a prior attorney-client relationship exists only if the moving party establishes that the attorney has since accepted employment that is adverse to the interest of a former client on a matter substantially related to the prior litigation." Fiddelman v. Redmon, 31 Conn. App. 201,210 (1993). A substantial relationship is found to exist upon a showing that "the relationship between the issues in the prior and present cases is `patently clear' or where the issues are `essentially the same.'" Id.
Once a substantial relationship between the prior and the present representation is demonstrated, the receipt of confidential information that would potentially disadvantage a former client is presumed. Bergeron v. Mackler, 225 Conn. 391,399 (1993).
Indeed, many years ago, the substantial relationship test and the presumption of divulgence were applied by Judge Weinfeld inT.C. Theatre Corp. v. Warner Bros. Picture, Inc., 113 F. Sup. 265
(S.D.N.Y.); reargument denied, 125 F. Sup. 233 (1953), where he said at pages 268-269:
 A lawyer's duty of absolute loyalty to his client's interest does not end with his retainer. He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship. Related CT Page 10896 to this principle is the rule that where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited . . . . [T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.
It has also been recognized that attorneys who represent clients in matrimonial dissolution actions have a special responsibility for a searching dialogue about all of the facts that materially affect the client's rights and interests. I see no reason why this responsibility should not continue to pertain to post-judgment modification of visitation and support enforcement proceedings. It must be borne in mind that there are powerful emotional factors present in marital dissolution matters not present in ordinary commercial relationships. The court must presume that information concerning the client's lifestyle, maternal relationship with her children, her finances, assets, income and expenses and insights into her conduct and behavior is typically imparted and discussed in the context of an attorney-client relationship. Much of this information is sensitive and intensely personal and is ordinarily entrusted to counsel by the client in confidence. Counsel often obtain insights into a client's conduct and behavior which could be relevant and useful in further proceedings. It also must be remembered that counsel in a matrimonial dissolution action must play several roles. These include not only that of advocate, but that of counselor and advisor. See Rules of Professional Conduct, Rules 2.1 and 3.1. CT Page 10897
Here, the lapse of slightly more than eight years since Attorney Traystman terminated his representation of the plaintiff has not sufficiently attenuated the substantial relationship between the prior and present cases. Indeed, given the nature of an attorney-client relationship in a marriage dissolution action, it appears doubtful that disqualification of prior counsel from representation of an adverse party can ever be dispensed with in a subsequent marital dissolution action. Time is definitely a factor; however, the stronger and more personal the attorney-client relationship was, the longer the period of disqualification should be.
The court is squarely faced with the question of reconciling the right of a person to counsel of his choice on one hand and the obligation of maintaining the highest standards of professional conduct and the scrupulous administration of justice on the other.
The issues in the present case involve custody, visitation, support, alimony and the unscrambling of property. Some of these issues, if not essentially the same as those involved in the prior litigation, have a `patently clear' relationship to them.
The plaintiff has established that: (1) she was a former client of Attorney Traystman and his present and former law firms; (2) Attorney Traystman represents a party directly adverse to her interests; (3) there is a substantial relationship between the issues in the present and prior litigation; (4) Attorney Traystman is presumed to have had access to relevant privileged information in the course of his prior representation of the plaintiff; and, (5) she has not consented to Attorney Traystman's representation of her present husband in this litigation.
As I have resolved all of the foregoing criteria in the plaintiff's favor, the final question which must be answered is whether she has waived her right to object to the continued representation by Attorney Traystman of her present husband, the defendant. The defendant claims she did so by engaging in negotiations and only filing this motion when the negotiations failed. The court is well aware that motions to disqualify counsel are not favored and often used for "strategic purposes" See Riccitelli v. Riccitelli, 8 Conn. L. Rptr. No. 9, 300 (1993) (Bassick, J.). Here, the parties engaged in a brief period of negotiation between the return date of August 23, 1994, and the date of the first motion to disqualify, September 12, 1994.[1]
CT Page 10898 This is not the waiver situation described in Brown v. Brown,2 CSCR 344 (1987) (Purtill, J.), where the motion to disqualify counsel was filed in May, extensive discovery and negotiations and pendente lite motions ensued for over six months, and after negotiations failed, only then was the motion to disqualify reasserted. The defendant has not proven facts sufficient to show the existence of a waiver.
I find that Attorney Traystman's continued representation of the defendant in this case would violate Rule 1.9(a) (of the Rules of Professional Conduct) and place him in the untenable position of probably violating Rule 1.9(b); hence, the plaintiff's motion to disqualify must be and is granted.
Teller, J.