[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISQUALIFY COUNSEL
In this case, plaintiff Northeast Promotions, Inc. (Northeast) has sued defendant Connecticut Marine Trades Association, Inc. (CMTA) for breach of contract and violation of the Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. §42-110b et seq., as a result of CMTA's allegedly improper termination of and failure to perform its obligations, complete its performance and pay sums due under two separate contracts which called for Northeast to render services to CMTA in connection with the production of certain boat shows to be held in New Haven, Connecticut and used boat shows to be held throughout the State. Northeast claims to have been damaged by CT Page 2476 CMTA's alleged decision to breach the two contracts by hiring others to produce the subject boat shows in their stead.
This action was filed on July 1, 1994, with a return date of July 5, 1995. On July 6, 1994, CMTA appeared in the action by and through its counsel, Brien P. Horan of Robinson Cole (R C).
On August 9, 1994, upon the filing of its revised complaint, Northeast moved this Court to disqualify R C as counsel for CMTA on the ground that "[R C] has represented the Plaintiff in certain matters prior to this date and their current representation of the Defendant in this matter raises the appearance of impropriety and potential conflicts of interest." MTD I, p. 1. This Motion, which was not accompanied by a memorandum of law or supported by any affidavits or other materials describing the nature or source of any potential conflict, was denied by this Court on September 12, 1994 without prejudice to its later submission in amplified form.
On December 8, 1994, Northeast filed a second motion to disqualify R C as counsel for CMTA in this case. This time, Northeast advanced two specific grounds in support of its claim for disqualification, and supported that claim with both an affidavit from its president, George Gonsalves, and a memorandum of law. Northeast's grounds for seeking to disqualify R C as CMTA's counsel are as follows: first, that R C previously represented both CMTA and Northeast as codefendants in another lawsuit whose subject matter allegedly "involve[d] issues identical to those involved in the instant action;" MTD II, p. 1; and second, that "[d]ue to its prior representation [in the earlier lawsuit], [R C] is in possession of information previously produced by [Northeast] which creates an actual conflict under Rule 1.9 of the Rules of Professional Conduct." Id.
CMTA acknowledges, as it must, that if either of the foregoing allegations were factually correct, its counsel, R C, could fairly be disqualified from continuing to represent it in this case. This, it concedes, is so because as Northeast's former counsel, R C is bound by Rule 1.9 of the Rules of Professional Conduct to observe the following restrictions upon its professional conduct in representing other parties whose interests may be adverse to Northeast's:
A lawyer who has formally represented a CT Page 2477 client shall not thereafter:
 (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
 (b) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.
Rules of Professional Conduct, Rule 1.9.
Here, however, CMTA insists that R C should not be disqualified from further representing it because there are no facts to support either of Northeast's claims. It contends, more particularly, that its lawyers' prior representation of Northeast was not in the matter here pending or in a substantially related matter, and that in the course of the earlier action, its lawyers learned nothing related to its representation of Northeast which had not become generally known. For the following reasons, the Court agrees with CMTA that Northeast has failed to meet its burden of proving that R C should be disqualified from representing it in this case.
FACTS
Northeast's claim for the disqualification of R C is presented against the following factual background: CMTA is a trade association which, among other things, puts on boat shows for its members. Northeast is a Connecticut corporation which, for a fee, renders services to other corporations and organizations in the promotion and production of their commercial endeavors, including boat shows.
In 1989, New England Yacht Consultants, Ltd. (New England Yacht), formerly a member of CMTA, filed an antitrust lawsuit against CMTA and Northeast in the Middlesex Judicial District. In that action (the Middlesex action), to which Docket No. CV 89-0054706S was assigned, New England Yacht sought to prove that CT Page 2478 CMTA and Northeast had conspired together to terminate New England Yacht's membership in CMTA and to deny it space in the 1989 Hartford Boat Show. This alleged conduct was claimed by New England Yacht to have violated both Connecticut's antitrust laws, C.G.S. §§ 35-26 and 35-28(d), and the Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. § 42-110b etseq. In addition, it was claimed to have violated the duty of good faith and fair dealing which CMTA owed to New England Yacht as the result of a contract between them.
On June 6, 1989, shortly after the Middlesex action was filed, R C entered its appearance in that action for CMTA. On that same day, the law firm of Green Kleinman appeared on behalf of Northeast. Northeast thereafter asked CMTA to indemnify it in the Middlesex action and to pay its legal costs, claiming that it had had no involvement in the conduct alleged in the lawsuit and had played no role in deciding who was eligible for CMTA membership, and thus who would be entitled to apply for exhibition space in the Hartford Boat Show. CMTA agreed to this request.
On July 13, 1989, New England Yacht served Northeast with its First Request For Production and Disclosure. This request asked Northeast to provide New England Yacht with in-depth information and extensive written materials concerning the business relationship between Northeast and CMTA. Among other things, it asked for a complete description of the business relationship between them, information concerning all contracts between CMTA and Northeast for the management of boat shows, details concerning Northeast's responsibilities with respect to such boat shows, and copies of all relevant books, records and correspondence. Northeast complied with this request by providing all requested information and materials to its lawyers from Green Kleinman, who duly transmitted them to both New England Yacht and CMTA without first seeking or obtaining a protective order or entering into a confidentiality agreement. All written discovery from Northeast was produced on or before November 22, 1989.
Thereafter, on February 6, 1990, counsel for New England Yacht deposed certain officers and employees from Northeast, with counsel from R C attending on behalf of CMTA. By attending these depositions and receiving copies of the above-described discovery responses, R C learned all the information it would ever learn from or about Northeast in the course of the CT Page 2479 Middlesex action.
In August 1991, CMTA and Northeast agreed that R C would file its appearance on behalf of Northeast in the Middlesex action and would thereafter handle the joint defense of CMTA and Northeast therein. Pursuant to this agreement, R C appeared on behalf of Northeast on August 28, 1991.
Very little information was needed to defend Northeast in the Middlesex action. The essence of its defense to that action was that it had played no role whatsoever in deciding who could join CMTA, and thus who could participate in the 1989 Hartford Boat Show. In the end, the trial court ruled that New England Yacht
 had failed to make out a prima facie case [against Northeast] by offering any relevant evidence that Northeast had any involvement with CMTA's decision to terminate the plaintiff's membership with the resultant loss of the plaintiff's privileges of membership including its right to participate in the 1989 Hartford Boat Show; . . . failed to offer any relevant evidence indicating that Northeast had any authority or decision making power with respect as to (sic) which entities would be allowed to participate in the 1989 Hartford Boat Show; and . . . failed to offer any relevant evidence that Northeast had a contractual relationship with the plaintiff; therefore no duty of good faith and fair dealing existed between the plaintiff and Northeast."
New England Yacht Consultants, Ltd. v. Connecticut TradesAssociation, Inc., et al, No. CV 89-0054706S (J.D. of Middlesex, 3/18/92, Spallone, S.T.R.), p. 8.
The instant action, as previously noted, relates to certain contracts under which CMTA and Northeast are alleged to have agreed that Northeast would render services to CMTA in connection with the production of certain boat shows in New Haven and certain used boat shows in other parts of the State. At issue in this case is thus the nature and extent of Northeast's CT Page 2480 and CMTA's respective obligations to each other under the terms of those contracts, not their powers or responsibilities under any other business arrangement, contractual or otherwise, which they may ever have entered into. The present dispute does not concern the 1989 Hartford Boat Show or any responsibilities with regard thereto which Northeast may ever have exercised on behalf of CMTA.
Discussion
For the purpose of Rule 1.9 of the Rules of Professional Conduct, two matters are "the same or . . . substantially related" when "the relationship between the issues in the [two] cases is `patently clear' or when the issues are `identical' or `essentially the same.'" Bergeron v. Mackler, 225 Conn. 391,399 (1993). Once a substantial relationship is demonstrated, "the receipt of confidential information which would potentially disadvantage a former client is presumed." Id.
A party moving for disqualification has the burden of proving that disqualification is warranted, including the burden of proving that the matters involved in the case where disqualifications is sought are substantially related to the matters previously handled for the former client. Prisco v.Westgage Entertainment, Inc., 799 F. Sup. 266, 268-69 (D. Conn. 1992). Where one seeks to disqualify his former counsel, a high standard of proof is required. Government of India v. CookIndustries, Inc., 569 F.2d 737, 739 (2d Cir. 1978). In disqualification matters, a court "must be `solicitous of a client's right freely to choose his counsel;' mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel and `may lose the benefit of its longtime counsel's specialized knowledge of its operation.'" Bergeron v. Mackler, supra, 397-98 (citations omitted).
Under these standards, the Court is persuaded that the lawsuit is neither the same as nor substantially related to the earlier lawsuit in which Northeast and CMTA were jointly represented by R C, for the relationship between the issues in the two cases is not patently clear and the issues involved in the two cases are neither identical nor essentially the same. Northeast claims that both cases focus on "the nature of the contractual relationship between Northeast and CMTA. Plaintiff's Memorandum, p. 6. "This contractual relationship," it argues, CT Page 2481 is the very issue which is at the center of the present litigation." Id. This argument, however, is wholly without merit for a number of reasons.
First, it is nowhere alleged that "the contractual relationship" at issue in the prior, Middlesex action is the same contractual relationship here at issue; nor can it be. In the earlier case, the only contract directly at issue was the contract between CMTA and New England Yacht, under which a duty of good faith and fair dealing was claimed to have arisen. Moreover, though the relationship between CMTA and Northeast was explored in some detail for the purpose of determining whether Northeast had any authority to decide who could be invited to the Hartford Boat Show, such authority, which was found to be non-existent, could plainly not have arisen under the wholly separate contracts at issue in this case.
A contract between two parties does not govern all relations between them on all matters which concern them unless the words of the contract so state. Where, then, two parties enter into several different contracts with one another, it is simplistic and misleading to speak of "the contractual relationship" between them, for each individual contract is a self-contained entity which establishes a separate and distinct contractual relationship.
Here, in fact, two separate contracts between the parties are at issue. In the Middlesex action, yet another, different contract was at issue. These contracts are not "the same." They concern different boat shows, to be held in different places on different dates, and involved different agreements between the parties as to the nature of their responsibilities thereunder. As each such contract established a wholly different "contractual relationship" between the parties, litigation as to one such contractual relationship has no necessary or obvious connection to any other lawsuit between them concerning other, wholly separate contractual relationships.
The issues in the two cases, moreover, are very different. In the Middletown action, the question presented was whether Northeast and CMTA had conspired together to exclude New England Yacht from membership in CMTA, and thus from participation in the Hartford Boat Show, in violation of State antitrust and unfair trade practices laws. Here, by contrast, the questions presented involve the rights and responsibilities CT Page 2482 of Northeast and CMTA to each other under entirely separate contracts which CMTA is accused of improperly terminating and failing to fulfill. It has not been suggested by either party that the instant action concerns the interests of New England Yacht or the authority of Northeast to control third parties' access to CMTA boat shows, which were the sole issues in the Middlesex action.
In short, the Court concludes that the first of the plaintiff's arguments in support of its motion to disqualify counsel must be rejected.
 II
Whether or not the issues involved in the present action are so nearly identical to those of the earlier action as to make the two actions the same or substantially related, R C owes Northeast the solemn obligation, under Rule 1.9(B) of the Code of Professional Conduct, not to use to its disadvantage in this action any information related to its prior representation of Northeast which has not become generally known. The obvious purpose of this additional requirement is to preserve the confidences of its erstwhile client, Northeast, and thereby to promote the essential understanding of all persons who consult with legal counsel that confidential communications to their lawyers will not be divulged.
Here, however, Northeast has failed to prove that R C acquired any information from it in confidence during its prior litigation with New England Yacht which has not already become generally known.
In his sworn affidavit in support of Northeast's second motion to disqualify, Northeast's president, George Gonsalves, offers the following, conclusory description of the communications he claims to have had with R C attorneys in the course of the Middlesex action:
 10. After filing its appearance on behalf of Northeast, Robinson and Cole represented Northeast throughout the prior action including the trial.
 11. During the course of that action discovery requests were propounded which CT Page 2483 involved, among other topics, a detailed analysis of Northeast's contractual relationship with CMTA. A copy of said discovery request is attached as Exhibit A.
 12. In order to comply with the above described discovery request and prepare for trial I had extensive discussions with Attorneys for Robinson and Cole concerning the nature of Northeast's contractual relationship with Northeast's co-defendant in that action, CMTA.
 13. CMTA is the defendant in this action which involves claims and counterclaims and for breaches of the same contract which was the subject of discovery in the prior litigation.
 14. The appearance filed on behalf of CMTA in the case at bar was signed by the same attorneys for Robinson and Cole who signed the appearance filed on behalf of Northeast in the prior litigation.
 15. The subject matter of the discovery requests and discussions with Robinson and Cole in the prior action involved the identical contract and subject matter which is the basis for the above captioned action.
Affidavit of George Gonsalves, pp. 2-3. For the following reasons, Mr. Gonsalves' description of relevant events is either demonstrably inaccurate or unsupportive of Northeast's claim for disqualification.
To begin with, it is apparent that R C played no role whatsoever in helping Northeast to respond to any discovery requests of any kind, for all such requests were responded to before R C filed its appearance for Northeast. In fact, as previously noted, all of Northeast's written discovery responses in the Middlesex action were provided in or before November of 1989, approximately twenty-two (22) months before R 
CT Page 2484 C filed its appearance for Northeast in that action. Mr. Gonsalves confirms this conclusion by specifically referring to the single discovery request which is appended to Northeast's second motion to disqualify. That request is New England Yacht's First Request For Production and Disclosure dated July 13, 1989, to which Northeast replied in writing before November 22, 1989. Though R C received Northeast's non-confidential response to this request in its capacity as counsel for Northeast's co-defendant, CMTA, it played no role whatsoever in preparing it, based on confidential attorney-client communications or otherwise.
Mr. Gonsalves also states that to prepare for his testimony at trial, he and R C attorneys had detailed discussions concerning the nature of Northeast's contractual relationship with CMTA. He makes no claim, however, that these discussions went beyond the detailed disclosures which Northeast publicly made in response to New England Yacht's First Request For Production and Disclosures dated July 13, 1989. To the contrary, Mr. Gonsalves explicitly equates the two disclosures of information in paragraph 12 of his affidavit, as quoted above. In sum, there is simply no evidence before this Court to suggest that anything R C may have learned about Northeast in the Middlesex action was based on confidential attorney-client communications, as opposed to public disclosures of information which predicted the filing of its appearance for Northeast.
Finally, the Court must reiterate in this context what it has already observed in discussing the plaintiff's first stated ground for disqualifying R C as CMTA's counsel: that even if information communicated in the prior litigation touched on any contractual relationship between CMTA and Northeast, it did not concern the separate, independent contracts which are at issue in this case. Those contracts were different undertakings between the parties for different purposes. The "contractual relationship" formed by each was plainly separate and distinct.
In conclusion, there is no basis in the evidence for the plaintiff's second claim that R C must be disqualified, as no information potentially disadvantageous to Northeast in this action was learned by R C in the earlier action by non-public means.
For all of the foregoing reasons the plaintiff's motion to disqualify counsel is hereby denied. CT Page 2485
Michael R. Sheldon J.