[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this marital dissolution action, the plaintiff has moved to disqualify the defendant's counsel from representing her on the basis that such representation constitutes a conflict of interest and violates the applicable Rules of Professional Conduct.
The facts are not in dispute. The parties were married in 1981 and have one minor child, a daughter, who is presently fifteen years of age. The plaintiff, who is represented by the firm of Dwyer, Sheridan Fitzgerald, filed a complaint seeking a marital dissolution and equitable relief. Additionally, he has filed pendente lite motions for exclusive use of the martial home, and custody and support for the parties minor child. The defendant is represented by the law firm of Beck Eldergill, P.C. Accompanying counsels March 9, 1999 appearance for the defendant was a motion for custody, support, alimony, exclusive possession, medical insurance and counsel fees pendente lite. Additionally, by pleading dated March 15, 1999, the defendant filed a cross complaint which includes a prayer seeking, interalia, custody, support, alimony, a conveyance of real estate, and equitable division of assets and counsel fees. Since October 13, 1998, when this matter was returned, Attorney Fatima Lobo and Attorney David Kritzman of the Beck Eldergill firm have participated in judicial proceedings on the defendant's behalf.
Approximately eleven years ago, Beck Eldergill represented the plaintiff in a post-marital dissolution matter against his CT Page 4656 former wife concerning child support. Approximately thirteen years ago, Beck Eldergill represented the plaintiff in a civil matter. The plaintiff, who is a school psychologist, had been providing private counseling services part-time in addition to his school employment, and these services had been billed through the offices of a psychiatrist. The insurance carrier that had provided reimbursements for these services determined that the billing had been inappropriate and brought a claim against the plaintiff for reimbursement. In order to settle the claim, the plaintiff made some repayment to the insurance carrier.
Attorney Kritzman has been associated with Beck Eldergill for approximately three years. Thus, he had no involvement with the firm's earlier representation of the plaintiff. Both matters were handled by Attorney Bruce Beck, who continues with the firm.
Prior to filing the firms appearance in this matter, Attorney Kritzman wrote to the plaintiff's counsel, Attorney Patrick Dwyer, by letter dated February 25, 1999. His letter states:
"I am writing to follow up on your telephone conversation with Bruce Beck earlier today. As you know, Marabeth Fallacaro consulted with me recently regarding my possible representation of her in the above matter. It is my understanding that, while your client was married to Marabeth Fallacaro, Bruce represented Mr. Fallacaro on a post-judgment support matter against his first wife.
To begin with, if our office were to be. retained by Ms. Fallacaro, I would be handling the file as Bruce would have no involvement. Secondly, Rule 1.9 of the Rules of Professional Conduct does not appear to prohibit our firm's involvement in this matter as any financial information gathered by Bruce is now stale and was previously disclosed to the court in Mr. Fallacaro's financial affidavit. Nonetheless, because our office wishes to avoid even the appearance of impropriety, I would appreciate your and your client's position regarding my representation of Ms. Fallacaro." Plaintiff's Exhibit 1. In response, Attorney Dwyer penned on the Kritzman letter, "Dave-Mr. Fallacaro does object to your office becoming involved" Plaintiff's Exhibit 2. This reply was faxed on March 1, 1999. Shortly thereafter, Beck 
Eldergill filed its appearance.
"A trial court has the authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct CT Page 4657 regarding attorneys." State v. Jones, 180 Conn. 443, 448 (1980). In October, 1986, Connecticut adopted the Rules of professional Conduct which govern attorney conduct. Rule 1.9 of the Rules states:
"A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known."
Rule 1.10, concerning imputed disqualification, states:
"(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rules 1.7, 1.8(c), 1.9, or 2.2." Thus, it is not significant for purposes of application of the Rules that it was attorney Beck and not Attorney Kritzman who previously represented the plaintiff. Nor is it ethically significant that it is now Attorney Kritzman and not Attorney Beck who is handling the defendant's representation against the firms former client. In the comment to Rule 1.10, the drafters state: The rule of imputed disqualification stated in subsection (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." In this context, the court finds no legal import to Attorney Kritzman's representation that Attorney Beck has no recollection of his earlier representation of the plaintiff, and Attorney Kritzman's representations that he will not discuss the matter with Attorney Beck. Thus, the question is not whether Attorney Kritzman or Attorney Beck have a conflict, of interest, but rather whether the firm of Beck Eldergill is burdened by such a conflict.
The Rules do not require disqualification in every case in which there may be the specter of conflict. Indeed, disqualification of counsel is a drastic remedy. "[I]t . . . serves to enforce the lawyers duty of absolute fidelity and to CT Page 4658 guard against the danger of inadvertent use of confidential information. In disqualification matters, however, we must be solicitous of a client's right freely to choose his counsel, mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel. . . ." (Internal quotations and citations omitted) Bergeron v. Mackley,225 Conn. 391, 298 (1993).
"A conflict of interest based on a prior attorney-client relationship exists only if the moving party establishes that the attorney has since accepted employment that is adverse to the interest of a former client on a matter substantially related to the prior litigation. Fiddleman v. Redmon, 31 Conn. App. 201, 210
(1993). A substantial relationship is found to exist upon a showing that "the relationship between the issues in the prior and present cases is `patently clear' or where the issues are `essentially the same.'" Id. Once a substantial relationship between the prior and the present representation is demonstrated, the receipt of confidential information that would potentially disadvantage a former client is presumed. Bergeron v. Mackley,225 Conn. 399 (1993).
Applying these principles to the present dispute, the court finds that in the pending marital dissolution action Beck 
Eldergill represents an interest adverse to the plaintiff, its former client. And, the plaintiff has not consented to the representation. Indeed, he made a timely objection to it. Additionally, the court finds that the issues in this marital dissolution case are substantially similar to the issues of the firms prior representation of the plaintiff.
In the prior child support case, consideration of the plaintiff's financial obligations to a minor child would naturally have implicated his earnings, earning capacity, and the extent of his access to the child. Similarly, in the instant matter, where the custody and support for the parties minor child appear contested, the plaintiff's parenting history, his earnings and earning capacity, and the extent to which he has historically fulfilled his parental and financial obligations to his daughter are relevant considerations.
In the matter involving the plaintiff's part-time employment as a counselor and where he engaged in billing practices which were challenged by an insurance carrier, his earning capacity apart from his principal employment, his truthfulness and CT Page 4659 business practices would naturally have been the topic of conversation between himself and his counsel. Those same issues are likely to arise in the context of the parties competing claims for custody and support, and the defendant's claims for alimony and a property disposition.
The court agrees with counsel for the defendant's claim that Beck Eldergill should not be disqualified merely on the basis of an appearance of impropriety. This case implicates genuine loyalty and real conflicting interests and not mere appearances. In a marital dissolution action, counsel must become familiar not only with the positions asserted by the respective parties. In order to assess ones clients prospects for attaining his or her goals, effective counsel must consider the strengths and vulnerabilities of his or her clients spouse, his clients negotiating style and predilections, including his or her aversion to or willingness to take risks and his or her character and stamina for conflict. In marital dissolution actions where lawyers have a heightened responsibility to assist clients to privately order their affairs without unnecessary acrimony, a client must be encouraged to confide his or her fears as well as aspirations not just in terms of legal outcomes but in the context of the broader human events taking place in the person's life. This relationship is doomed to failure if a client must guard his confidences with the fear that the lawyer in whom he or she confides may some day become his or her adversary. The rules guarding against conflicts of interest are intended not only to protect the confidentially of disclosed information but to encourage clients to make full disclosure to their counsel with the confidence that such communications will be protected by counsels enduring duty of loyalty.
Counsel's claim that no confidences were actually divulged by the plaintiff in the prior action, or that any information he did disclose was also made public by the filing of his financial affidavit is unavailing. Once the "substantial relationship" test has been passed, the court will not inquire whether actual confidences were ever disclosed in the first representation. ". . . Any rule requiring proof of actual disclosures would itself undermine the policy of encouraging free communication by forcing the client to divulge his confidences in court as part of his proof." Cleland v. Cleland, 35 Conn. Sup. 215 (1979); cf. also, T.C. Theatre Corporation v. Warner Brothers Pictures. Inc.,113 F. Sup. 265 (S.D.N.Y.) CT Page 4660
Accordingly, the motion to disqualify is granted.
Bishop, J.