[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR TEMPORARY INJUNCTION
The City of Bridgeport initiated this equitable proceeding against The Kasper Group, Inc. for the purpose of obtaining orders from this court (1) disqualifying Attorney Daniel Shepro from representing The Kasper Group, Inc. in an arbitration proceeding and (2) staying the arbitration proceeding until an informal dispute resolution process is pursued by the parties. For the reasons stated below, the court denies the city's request for a temporary injunction.
The pertinent facts are as follows. In May of 1999, the City of Bridgeport and The Kasper Group, Inc. executed a contract under which The Kasper Group, Inc. agreed to provide engineering services to the city in connection with the city's GIS[1] project. The contract was drafted by Attorney Stephen C. Tower, who was a partner in the law firm of Willinger, Shepro, Tower Bucci, P.C. The law firm represented both The Kasper Group, Inc. and the City of Bridgeport in the drafting of the contract, which amended a 1998 agreement that had been signed on behalf of the city by the city attorney. The Willinger firm also represented the city on matters that were unrelated to the GIS project.
In 1999, Attorney Shepro was a partner in the law firm of Willenger, Shepro, Tower Bucci, P.C. The law firm has since dissolved. When Attorney Shepro was a member of the firm, he represented the city in a condemnation matter relating to a project known as "Steel Point." He also represented an agency of the city, the Water Pollution Control Authority, in a collection matter. Attorney Shepro left the Willinger firm in 1999 and is now a partner in the firm of Shepro and Blake. He now represents The Kasper Group, Inc. in its effort to obtain payment for engineering services it furnished the city pursuant to the GIS contract. CT Page 5181
On November 20, 2001, The Kasper Group, Inc. filed a demand for arbitration with the American Arbitration Association describing the nature of the dispute as follows: "The City of Bridgeport (Respondent) breached its contract (re: GIS) with Kasper Group, Inc. (Claimant) by failing to pay approximately $268,000.00." See Plaintiff's Exhibit 5. Both parties, when arguing before this court, described the arbitration proceeding as a "collection action."
After the arbitration proceeding was commenced, the city brought this suit seeking injunctive relief, i.e. disqualification of Attorney Shepro and a stay of the arbitration proceeding. On February 20, 2002, the court (Sheedy, J.) issued a temporary order staying the arbitration proceeding until the city's application for a temporary injunction could be heard This court will first address the disqualification issue.
 I
"[T]he Superior Court has broad discretionary power to determine whether an attorney should be disqualified for an alleged breach of confidentiality or conflict of interest." State v. Jones, 180 Conn. 443,448, 429 A.2d 936 (1980). "Disqualification of counsel is a remedy that serves to "enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information.'Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corporation,518 F.2d 751, 754 (2d Cir. 1975). In disqualification matters, however, we must be `solicitous of a client's right freely to choose his counsel'; Government of India v. Cook Industries, Inc., 569 F.2d 737, 739
(2d Cir. 1978); mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel and "may lose the benefit of its longtime counsel's specialized knowledge of its operations.' Id. The competing interests at stake in the motion to disqualify, therefore, are: (1) the defendant's interest in protecting confidential information; (2) the plaintiffs' interest in freely selecting counsel of their choice; and (3) the public's interest in the scrupulous administration of justice. . . ." Bergeron v. Mackler,225 Conn. 391, 397-98, 623 A.2d 489 (1993).
The city claims that there are two grounds upon which Attorney Shepro should be disqualified. The city first argues that Attorney Shepro should be disqualified because he and his former law firm represented the city in connection with the preparation of the 1999 GIS contract as well as other matters. Rule 1.9 of the Connecticut Rules of Professional Conduct governs disqualification of counsel for a conflict of interest relating to a former client and will be the first rule discussed by the court. This rule provides as follows: CT Page 5182
A lawyer who has formerly represented a client in a matter shall not thereafter:
 (1) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
 (2) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.
The city relies on the first part of Rule 1.9. The Connecticut rule follows the original version of Model Rule 1.9 that was adopted by the ABA in 1983. The model rule, but not the Connecticut rule, has been amended. "[N]o provision [was] made in the [1983] Rule . . . for disqualification of a lawyer based upon prior representation by a lawyer's former firm when the lawyer did not personally handle the representation of the client by the lawyer's former firm, but did acquire confidential information about the matter by virtue of the lawyer's former employment." ABA/BNA Manual of Professional Conduct, § 51:202.[2]
When applying Rule 1.9 rule, this court must give careful consideration to protecting confidential information. The City of Bridgeport and The Kasper Group, Inc. were former co-clients of the law firm of Willenger, Shepro, Tower Bucci, P.C. "The decisions are divided on the question whether a former coclient is entitled to the protection of the former-client conflict rules." West's Modern Legal Ethics, Hornbook Series, § 7.4, p. 373. "Unless the co-clients have agreed otherwise, a communication . . . is not otherwise privileged as between the co-clients in a subsequent adverse proceeding between them." Restatement of Law Governing Lawyers (Third) § 75(2). Tn the present case, it appears that there is no confidential information to protect.
Under Rule 1.9 "an attorney should be disqualified if he has accepted employment adverse to the interests of a former client on a matter substantially related to the prior representation. . . . This test `has been honed in its practical application to grant disqualification only upon a showing that the relationship between the issues in the prior and present cases is `patently clear' or when the issues are `identical' or `essentially the same.' . . . Once a substantial relationship between the prior and the present representation is demonstrated, the receipt of confidential information that would potentially disadvantage a former CT Page 5183 client is presumed. . . ." Bergeron v. Mackler, supra at 398-99. "A subsequent matter is substantially related to an earlier matter . . . if there is a substantial risk that the subsequent representation will involve the use of confidential information of the former client obtained in the course of the representation. . . . Substantial risk exists where it is reasonable to conclude that it would materially advance the client's position in the subsequent matter to use confidential information obtained in the prior representation." The Law Governing Lawyers, Restatement 3d, § 132, p. 380-81. "Matters are `substantially related' for purposes of this Rule if they involve the same subject matter or if there otherwise is a substantial risk that confidential information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." ABA Ethics 2000 Commission on the Evaluation of the Rules of Professional Conduct, November 2000 Report, Rule 1.9, comment 3.
Applying this standard, this court concludes that the present matter is not substantially related to the earlier matter. In the earlier matter, Attorney Shepro's former partner drafted a contract on behalf of both parties to the contract. The present matter, on the other hand, entails an assessment of the scope and value of work that was done by The Kasper Group, Inc. The interests of Attorney Shepro's present client will not be advanced in any way by the use of confidential information obtained from the city in the prior matter. Disqualification under Rule 1.9 is not appropriate.
 II
The city next argues that Attorney Shepro should be disqualified because his representation of The Kasper Group, Inc. violates Rule 1.11. The city relies on the following provisions of this rule:
 (a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. . . .
 (b) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in CT Page 5184 which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.
. . .
(d) As used in this Rule, the term "matter" includes:
 (1) Any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties. . . .
 (e) As used in this Rule, the term "confidential government information" means information which has been obtained under governmental authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public.
Neither paragraph (a) nor paragraph (b) of Rule 1.11 disqualify Attorney Shepro. According to the commentary to Rule 1.11, "[this rule prevents a lawyer from exploiting public office for the advantage of a private client." The commentary also provides that "the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government." Paragraph (a) of the rule pertains to those situations where the successive clients are a public agency and private client. Under this part of the rule, a lawyer is disqualified from representing the private client "in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee. . . ." Since Attorney Shepro did not participate personally and substantially in the drafting of the GIS contract, he is not disqualified under this part of the rule.
Paragraph (b) of Rule 1.11 is written to prohibit inappropriate use of information derived from government service. As noted in the commentary, "unfair advantage could accrue to the private client by reason of access to confidential government information about the client's adversary, obtainable only through the lawyer's government service." The commentary CT Page 5185 also provide that "[s]ubsection (b) operates only when the lawyer in question has knowledge of the information, which means actual knowledge; it does not operate with respect to information that merely could be imputed to the lawyer." Since the city relies on a theory of imputed knowledge, this rule is inapplicable. Furthermore, the rule applies to confidential government information," which term is defined in paragraph (d) (2) (e) of the rule. The information obtained by the Willinger firm from its co-clients during the drafting of the 1999 GIS contract was not confidential.
 III
The city claims that the arbitration proceeding should be stayed until The Kasper Group, Inc. exhausts an informal dispute resolution procedure that is set forth in the GIS contract. Paragraph 7.12 of the contract provides, in part, that "all disputes . . . shall be submitted for informal resolution to the President of Consultant and Chief Administrative Officer of City." The city contends that Kasper's claim can not be arbitrated until Kasper attempts to exhaust this informal dispute resolution procedure. Kasper has, however, attempted to pursue this procedure. See Exhibit 6. The city has failed to persuade the court that the arbitration proceeding should stayed until the procedure set forth in paragraph 7.12 is followed.
 IV
In summary, this court concludes that Attorney Daniel Shepro should not be disqualified from representing the Kasper Group, Inc. in the arbitration proceeding. This court concludes that the arbitration proceeding should not be stayed. The temporary restraining order is dissolved. The application for a temporary injunction is denied.
THIM, J.